[No. 42637.     En Banc.     October 11, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD R. SCHEFFEL *et al.*, *Appellants*.

*Charles H. Barr* and *Douglas D. Lambarth* of *Spokane County Legal Services,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* and *David T. Wood,* for respondent.

HUNTER, J.—These are consolidated cases in which the appellants (defendants), Richard R. Scheffel and Hideo Saiki, raise several constitutional objections to the Washington Habitual Traffic Offenders Act, RCW 46.65 (effective August 9, 1971).

The facts as stipulated to by counsel are as follows. On February 10, 1972, the defendants were ordered to appear in the Superior Court for Spokane County to show cause why they should not be barred as habitual offenders from operating motor vehicles on the highways of the state. Subsequent to the signing of the order, the defendants were each served with the order to show cause and with a complaint for habitual offender status.

The defendant, Scheffel, was alleged to be an habitual traffic offender on the basis of three distinct convictions of driving while under the influence of alcohol. The respective dates of such alleged convictions were September 1, 1970, December 11, 1970, and October 2, 1971. The defendant, Saiki, was also alleged to be an habitual traffic offender on the basis of three distinct convictions of driving while under the influence of alcohol. The respective dates of the alleged convictions were May 4, 1968, December 6, 1970, and August 21, 1971.

At the hearing, both defendants were represented by counsel who submitted supporting memoranda of law, presented testimony and argued orally. The court had before it the records, files, and testimony in this cause.

After considering respective counsel's argument as to the constitutional invalidity of the Washington Habitual Traffic Offenders Act, RCW 46.65, the testimony of the defendants and the evidence presented, the trial court upheld the validity of the act, held the defendants to be habitual offenders, and revoked their licenses for the statutory period.

We accepted direct appeal here because of the fundamental issues requiring ultimate determination by this court.

Before discussing the contentions raised by the defendants, a brief review of the pertinent provisions of RCW 45.65 is necessary in order to fully understand the arguments of the parties.

The policy of the act is stated in RCW 46.65.010, which provides:

> It is hereby declared to be the policy of the state of Washington:
> (1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and
> (2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

(3) To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

To achieve this goal, RCW 46.65.020 (1) provides for the license revocation of anyone who, within a five-year period receives

Three or more convictions, singularly or in combination, of the following offenses:

(a) Negligent homicide as defined in RCW 46.61.520; or

(b) Driving or operating a motor vehicle while under the influence of intoxicants or drugs; or

(c) Driving a motor vehicle while his license, permit, or privilege to drive has been suspended or revoked; or

(d) Failure of the driver of any vehicle involved in an accident resulting in the injury or death of any person to immediately stop such vehicle at the scene of such accident or as close thereto as possible and to forthwith return to and in every event remain at, the scene of such accident until he has fulfilled the requirements of RCW 46.52.020.

RCW 46.65.030 requires that the director of the Department of Motor Vehicles certify transcripts of any person coming within the definition of an habitual offender to the prosecuting attorney of the county in which the person resides. Under RCW 46.65.040 the prosecuting attorney is required to file a complaint against the person named in the transcript. Pursuant to RCW 46.65.050, the court in which the complaint is filed enters an order to the defendant to show cause why he should not be barred as an habitual offender from operating any vehicle on the highways of this state.

The hearing is governed by RCW 46.65.060, which basically limits the hearing to determining whether or not the person named in the complaint is the person named in the transcript and whether or not the person is an habitual offender as defined. If the court answers both of these

questions in the positive, then the defendant's license is revoked for 5 years. After 2 years one whose license has been suspended may petition for the return of his operator's license.

With this brief outline of the pertinent provisions of the act in mind, we turn to the issues raised by the parties.

The defendants' first contention is that the hearing, as restricted by the trial court and by the apparent language of the act, constitutes a denial of procedural due process guaranteed by the fourteenth amendment to the United States Constitution. We disagree.

██ The possession of a motor vehicle operator's license, whether such possession be denominated a privilege or right, is an interest of sufficient value that due process of law requires a full hearing at some stage of the deprivation proceeding. *Ledgering v. State*, 63 Wn.2d 94, 385 P.2d 522 (1963). The purpose of the hearing will be a controlling factor in determining what specific procedures are appropriate. *Olympic Forest Prods. v. Chaussee Corp.*, 82 Wn.2d 418, 511 P.2d 1002 (1973). The purpose of the hearing in the instant case is to determine whether or not the individual is an habitual offender as defined by the legislature. The procedure adopted by the legislature in the instant case, and followed by the trial court, is designed to insure that the individual's license is not wrongfully revoked. It is designed to insure that the individual did in fact accumulate the number of violations he is charged with and that he does in fact come within the legislative definition of an habitual offender. As such the hearing does not appear to be in violation of the due process provision of either the federal or state constitution.

The defendants argue, however, that the hearing is too limited in scope. The hearing, they argue, should include consideration by the court of not only the law, but also of the facts bearing upon the merits of the suspension, including the facts and circumstances bearing upon the wisdom of the suspension in keeping with public safety, accident prevention, and owner and driver responsibility. We disagree.

■ The prevention of the habitually reckless or negligent from operating their vehicles upon the public highways is well within the police power of the legislature. *Gnecchi v. State,* 58 Wn.2d 467, 364 P.2d 225 (1961). The wisdom of the revocation or suspension in keeping with public safety, accident prevention and owner-driver responsibility has been determined by the legislature. Once an area of the law·is conceded to be subject to the state's police power, the wisdom, necessity or expediency of the particular legislative enactment is not subject to judicial review. *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969).

The defendants further argue, however, that *Ledgering v. State, supra,* and *Bell v. Burson,* 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), compel the consideration of the merits of the suspension on an individual basis. We disagree.

In the *Ledgering* case we were discussing the discretionary power to suspend motor vehicle operators' licenses conferred upon the director of the Department of Motor Vehicles, and the review of the director's exercise of his discretion. The case is thus distinguishable upon the facts and the law applicable to the facts of that case.

*Bell v. Burson, supra,* dealt with the hearing afforded an uninsured motorist who failed to post security to cover the amount of damages after an accident. The hearing provided for under the Georgia law did not consider the question of liability and the court held that the state had to look into the question of liability since liability, in the sense of an ultimate judicial determination of responsibility, played a crucial role under the state's statutory scheme for motor vehicle safety responsibility.

■ The ultimate judicial determination which plays the crucial role under this state's statutory scheme is whether or not the defendant had previously been convicted of driving while under the influence of intoxicating liquors and/or drugs. Due process is accorded the defendant for the act provides that the defendant may appear in court and con-

test any of the allegations of the state as to the prior convictions. As the trial court stated, procedural due process could not be more complete than it is in these cases determining the ultimate question of the extent of the defendants' prior convictions.

■■ The defendants next contend that the act as applied is retrospective and therefore unconstitutional because by relying upon convictions prior to the act's effective date it imposes a new penalty, unfairly alters one's situation to his disadvantage, punishes conduct innocent when it occurred, and constitutes an increase of previously imposed punishment. We disagree, and answer these contentions in the order stated. In *Hammack v. Monroe St. Lumber Co.*, 54 Wn.2d 224, 229, 339 P.2d 684 (1959), we quoted *Society for the Propagation of the Gospel v. Wheeler,* 22 Fed. Cas. 756 (No. 13,156) (Cir. Ct. N. H. 1814), with approval for the following with regard to retroactive laws:

> ". . . Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective; . . ."

Each of the defendants in the instant case had accrued two convictions prior to the effective date of the act. At that time they were not classified as habitual offenders. Upon the effective date of the act, they were on notice that if they accrued one more violation within the statutory period, they would be classified as habitual offenders. Each accrued another violation within the act's prohibition. But for the additional violation they would not be classified as habitual offenders. It was the final violation which brought them within the ambit of the act.

We find no vested right which has been impaired or taken away. The act does not impose any new duty, and it does not attach any disability on either of the defendants in respect to transactions. The defendants could have avoided

the impact of the act by restraining themselves from breaking the law of this state.

A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation. See *Barbieri v. Morris*, 315 S.W.2d 711 (Mo. 1958), and *Bates v. McLeod*, 11 Wn.2d 648, 120 P.2d 472 (1941). See also *Cooley v. Texas Dep't of Pub. Safety*, 348 S.W.2d 267 (Tex. Civ. App. 1961).

■ We also disagree with the defendants' argument that the revocation of a driver's license is a punishment. While recognizing in one context that it might be so interpreted, it has been almost universally held that the suspension or revocation of a driver's license is not penal in nature and is not intended as punishment, but is designed solely for the protection of the public in the use of the highways. See *Anderson v. Commissioner of Highways*, 267 Minn. 308, 126 N.W.2d 778 (1964), and the cases cited therein; *State Dep't of Highways v. Normandin*, 284 Minn. 24, 169 N.W.2d 222 (1969); and *Huffman v. Commonwealth*, 210 Va. 530, 172 S.E.2d 788 (1970), and the cases cited therein. It is also well established that a proceeding to revoke a driver's license is a civil not a criminal action. *Huffman v. Commonwealth, supra*; *Barbieri v. Morris, supra*; and *Cooley v. Texas Dep't of Pub. Safety, supra*.

The defendants next contend that the prosecution by the state to impose an additional penalty for the acts already punished violates the constitutional protection against double punishment and double jeopardy found in Const. art. 1, § 9, and in the fifth and fourteenth amendments to the United States Constitution. We disagree.

As heretofore stated, the revocation of a license is not a punishment, but it is rather an exercise of the police power for the protection of the users of the highways. The court, in *Anderson v. Commissioner of Highways, supra*, addressed a similar issue and stated on page 316:

Petitioner's argument that the suspension here violates constitutional prohibitions against double jeopardy is of no merit as it is well established that suspension or revocation of a license is not a punishment but is rather an exercise of the police power for the protection of the public.

(Footnote and citations omitted.)

The privilege to operate an automobile is a valuable one and may not be unreasonably or arbitrarily taken away; however, the enjoyment of the privilege depends upon compliance with the conditions prescribed by the law and is always subject to such reasonable regulation and control as the legislature may see fit to impose under the police power in the interest of public safety and welfare. *See Anderson v. Commissioner of Highways, supra.*

The defendants also contend that the act denies the defendants and their class equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution by mandating license suspension upon accumulation of a specified number of violations without regard to the issue of validity of conviction, and without due process in the review procedure. We disagree.

The issue as to the validity of the convictions is determined at the prior trials or bail forfeitures. If the defendants wished to challenge the validity of the convictions, they should have done so at that time.

We have heretofore determined that there is no apparent violation of due process involved in the instant case, and therefore there is no need to determine whether or not the defendants are being denied equal protection of the laws. The defendants argue in effect that the act impinges upon a fundamental right, the right to travel, and therefore cannot be justified as there is no compelling state interest available to uphold the act. We disagree. There is no constitutional right to a particular mode of travel. The right to travel is not being denied. The defendants are being prohibited from using a particular mode of travel in a particular way, due to their repeated offenses, in order to protect the public at large which we find to be reasonable

under the circumstances. *See Eggert v. Seattle*, 81 Wn.2d 840, 505 P.2d 801 (1973), for a discussion of the right to travel.

Moreover, the governmental interest asserted in support of the classification, we believe, is such that it meets the more stringent test of compelling state interest as fully explained in the *Eggert* case. The act calls for the revocation of the privilege of operating a vehicle where one has demonstrated his disregard for the traffic safety of others by accumulating the specified number of bail forfeitures or convictions. The governmental interest involved is that of the protection of the individuals who use the highways. Even fundamental liberties cannot be used to jeopardize the members of the community and where one does so use his liberties, he is subject to having said liberties curtailed.

Finally, the defendants contend that the Washington Habitual Traffic Offenders Act, as it affects them, constitutes in effect a bill of attainder prohibited by U.S. Const. art. 1, § 9, cl. 3, and Const. art. 1, § 23. We find this contention to be without merit.

A bill of attainder is a legislative act which applies to named individuals or to easily ascertained members of a group in such a way as to inflict punishment on them without judicial trial. *United States v. Brown*, 381 U.S. 437, 14 L. Ed. 2d 484, 85 S. Ct. 1707 (1965), and the cases cited therein. As heretofore stated, the act provides for a trial which is appropriate for the nature of the case. Furthermore, the act does not single out any individual or easily ascertained members of a group, as the act applies to all users of the highways who come within the ambit of the definition of an habitual traffic offender.

The order entered by the trial court is affirmed.

HALE, C.J., FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied December 12, 1973.