THE STATE OF WASHINGTON, *Respondent*, v. ANDREW WARREN FRANCIS *et al, Appellants.*

*Harry L. Johnsen,* for appellants.

*Jeremiah M. McCormick, Prosecuting Attorney*, and *Melanie A. Oettel* and *Larry A. Tobiska, Deputies*, for respondent.

WRIGHT, J.—The issue in this case is whether an uncounseled pre-*Argersinger* (*Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972)) conviction for a traffic offense can be considered in license revocation proceedings under the Washington Habitual Traffic Offenders Act. RCW 46.65. We hold that the use of the traffic convictions involved herein are not barred by *Argersinger* and affirm the decisions of the trial courts.

The appellants were each found by trial courts to be habitual traffic offenders. The most recent traffic convictions of each appellant, which precipitated the several habitual traffic offender complaints, were obtained when each

was without counsel, and was without sufficient funds to retain an attorney. None was informed by the court of his or her right to have an attorney appointed at public expense. Each was tried for an offense for which imprisonment was a possible punishment. In *McInturf v. Horton*, 85 Wn.2d 704, 538 P.2d 499 (1975) (which was argued on the same day as the instant case), it was held a defendant in such a case is entitled to counsel under JCrR 2.11(a)(1).

Each defendant moved to dismiss the habitual traffic offender complaint on the ground that the abstract of conviction furnished by the Washington State Department of Motor Vehicles did not affirmatively indicate if they had been represented by counsel, or, in the alternative, had effectively waived counsel. The trial court denied each of these motions. Each defendant appealed. The cases were consolidated and transferred to this court.

Appellants rely primarily on *Berry v. Cincinnati*, 414 U.S. 29, 38 L. Ed. 2d 187, 94 S. Ct. 193 (1973), where the court announced at pages 29-30:

> Those convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case . . . if they allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court.

(Citations omitted.) Appellants assert that the collateral legal consequences of license revocation is sufficient to keep the uncounseled traffic convictions from becoming moot. Appellants urge that *Argersinger* be applied retroactively to invalidate the uncounseled convictions because the loss of a driving entitlement presents a substantial loss.

■ *Berry v. Cincinnati, supra*, is clearly applicable to those collateral consequences which impose a criminal penalty, *i.e.*, imprisonment or fine. In *Cottle v. Wainwright*, 493 F.2d 397 (5th Cir. 1974) it was held that an uncounseled misdemeanor conviction could not be used as a basis for parole revocation. That case arose out of an earlier vacation of judgment and remand from the United States Supreme Court in a memorandum decision contained in *Wainwright*

*v. Cottle,* 414 U.S. 895, 38 L. Ed. 2d 138, 94 S. Ct. 221 (1973). Here, however, any uncounseled conviction in any appellant's driving history is too far removed to invalidate the habitual traffic offender proceeding. We also feel obliged to give serious weight to the very substantial State interest involved. The program of dealing with traffic offenders would be hampered were we to apply *Argersinger* retroactively in all habitual traffic offender actions.[1]

As a first step in analysis, we note that a license revocation proceeding is civil, not criminal, in nature. *State v. Scheffel,* 82 Wn.2d 872, 514 P.2d 1052 (1973). Further, such proceedings, even if termed a collateral consequence of accumulated driving convictions, must be viewed as a consequence that is indirect and removed, both in time and in purpose, from the original driving convictions of the offender. In this jurisdiction, the offender must have committed at least three serious traffic offenses or 20 moving violations under RCW 46.65.020 before the Director of Motor Vehicles can institute such proceedings. It cannot be said that the uncounseled prior misdemeanor convictions of appellants precipitated an immediate direct loss of an entitlement—the right to drive. *Berry v. Cincinnati, supra,* should be limited to consequences that directly flow from the uncounseled convictions and which are serious in nature.

As a further consideration, the nature, essence and purpose of habitual traffic offender actions requires that caution be exercised before *Argersinger* is applied to alter what use may be made of driving records in such proceedings. The habitual traffic offender proceeding is a separate action initiated at the behest of the Director of the Department of Motor Vehicles, with a purpose other than punishment. The end sought in such proceedings is the maintenance of safety on the public highways in this state. As we noted in *Thurston County v. Gorton,* 85 Wn.2d 133, 530 P.2d 309 (1975), the proceedings under RCW 46.65.050 are

---

[1] We speak of the convictions being "pre-*Argersinger*." This is true of the vast majority of the convictions. *Argersinger* was decided June 12, 1972. In view of the result reached herein and the basis for that result, we shall not discuss the matter further.

similar to a nuisance abatement proceeding. In effect, the State is seeking to regulate and administer its own public highway system by barring certain drivers who are deemed to represent a peril and hazard to the motoring public. *Thurston County v. Gorton, supra* at 135, 136, 139.

For the above reasons, we do not feel that *Argersinger* and the retroactive rule in *Berry v. Cincinnati, supra,* are violated by including the single pre-*Argersinger* conviction of each appellant in the driving records that furnished the basis for the license revocations. Judge Russel, in discussing the same problem in *Marston v. Oliver,* 485 F.2d 705, 710 (4th Cir. 1973), stated:

> We would not like to be misunderstood. We find no quarrel with the result reached in *Cottle,* where the effect of the uncounseled prior misdemeanor conviction was the automatic and immediate loss of liberty on the part of the defendant. In such a situation, we, too, would find *Argersinger* retroactive. *Where we would not give it retroactive application is in those cases, like that here, in which the conviction provides merely the possibility of a basis for a loss of a civil right in a subsequent civil proceeding but involves no warrant for imprisonment and where any retroactive application would result in a substantial frustration of a valuable public policy of barring the public highways to criminally careless drivers who represent a peril and hazard to the traveling public.*

(Italics ours.) *Accord, Ferguson v. Gathright,* 485 F.2d 504 (4th Cir. 1973), *cert. denied,* 415 U.S. 933, 39 L. Ed. 2d 491, 94 S. Ct. 1447 (1974); *Hensley v. Ranson,* 373 F. Supp. 88 (E.D. Va. 1974); *Whorley v. Brillhart,* 373 F. Supp. 83 (E.D. Va. 1974); *Morgan v. Juvenile & Dom. Rel. Ct.,* 491 F.2d 456 (4th Cir. 1974); *State v. Sanchez,* 110 Ariz. 214, 516 P.2d 1226 (1973); *State v. Zaragoza,* 21 Ariz. App. 596, 522 P.2d 552 (1974); *Whorley v. Commonwealth,* ............ Va. ............, 214 S.E.2d 447 (1975).[2]

---

[2] With the exception of *Ferguson v. Gathright, supra,* and *State v. Sanchez, supra,* the above mentioned cases were rendered subsequent to *Berry v. Cincinnati, supra,* holding *Argersinger* should be applied retroactively if claimants could allege and prove a bona fide, existing "case or controversy sufficient to invoke the jurisdiction of a federal court." *Berry v. Cincinnati, supra* at 30.

Similarly, in *Whorley v. Commonwealth, supra,* the court found no need to apply *Argersinger* retroactively in a license revocation proceeding where only loss of the privilege of driving was involved. It was stated in *Whorley v. Commonwealth, supra* at 451:

> The privilege of operating a vehicle on the highways of Virginia is granted to those who qualify. It is a privilege that can be withdrawn, revoked or suspended under certain conditions. A proceeding under Virginia's Habitual Offender Act is not a criminal proceeding. It is one designed solely to determine if the past record of an automobile driver is such that he has become a menace on the highways and is a habitual offender. In such a proceeding no fines are imposed, and no loss of liberty is involved. The only result of an adjudication of being a habitual offender is the entry by the court of an order directing such offender not to operate a motor vehicle on the highways of Virginia, and to surrender his license or permit to operate such a vehicle. The offender lives under no threat by the state of incarceration. He is deprived of no civil liberties, rights or privileges, other than the privilege of operating a vehicle on the highways. This privilege has been denied thousands of others who have run afoul of the motor vehicle laws of the state.

Based on the above authorities and our own analysis, we affirm the trial courts' actions in overruling the motions to dismiss the habitual traffic offender complaints and affirm the determinations that the appellants were habitual traffic offenders.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.