[No. 45897. En Banc. May 15, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTONIO RODRIGUEZ PONCE, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. HERIBERTO OZUNA, *Petitioner.*

---

*Charles E. Corrigan* of *Evergreen Legal Services,* for petitioners.

*Arthur R. Eggers, Prosecuting Attorney,* and *Carl L. Johnson, Deputy,* for respondent.

Hicks, J.—Petitioners challenge a decision of the Court of Appeals, Division Three, holding that the constitutional validity of underlying traffic convictions may not be collaterally attacked in a habitual traffic offender action in superior court. *State v. Ponce,* 21 Wn. App. 277, 584 P.2d 482 (1978). We granted the petition for review and we affirm the Court of Appeals as to Ponce; we reverse as to Ozuna.

The consolidated cases of petitioners Ponce and Ozuna are before this court upon an agreed set of facts. In early 1977, the Walla Walla County Prosecutor served Ozuna and Ponce with complaints alleging that each was a habitual traffic offender based upon past driving convictions. Such actions are governed by RCW 46.65, the Washington Habitual Traffic Offenders Act. RCW 46.65.020 defines a habitual traffic offender as an individual who has "[t]hree or more convictions, singularly or in combination," of certain specified traffic offenses committed within a 5–year period.[1] Each specified offense carries a possible jail sentence.[2]

In each case, under RCW 46.65.050, the prosecutor moved for an order to show cause why the petitioner should

---

[1] RCW 46.65 was revised in the recent legislative session (Laws of 1979, ch. 62, p. 257, effective June 7, 1979), at the request of the Department of Licensing. The responsibility for determining habitual traffic offender status was transferred from the courts to the Department of Licensing. An aggrieved party may appeal the decision to the superior court for trial de novo. For purposes of this case, references will be made to the preamendment statutes applicable at the time.

[2] RCW 46.65.020 enumerates four offenses for purposes of the habitual traffic offender status: Negligent homicide, driving under the influence, driving with a suspended license, hit and run, attended or unattended. RCW 46.61.520 imposes a maximum sentence of 10 years in prison, 1 year in jail for negligent homicide. A maximum penalty of 1 year is imposed for driving while under the influence of intoxicating liquor or drugs. RCW 46.61.515. Failure to stop at an accident may result in a 1–year sentence. RCW 46.52.020. Finally, driving with a suspended or revoked license may result in a 6–month maximum sentence for the first conviction. RCW 46.20.342. 1979 amendments added reckless driving as a traffic offense under RCW 46.65.020. *See* RCW 46.61.500.

not be found to be a habitual traffic offender. Each petitioner moved to dismiss the complaint against him, arguing that the convictions underlying his complaint were constitutionally invalid. As to the prior convictions, the trial court found the following facts: (1) neither petitioner was advised that he had a right to counsel and that if indigent the court would appoint counsel; (2) each petitioner was indigent and without means to secure counsel for at least one of the three traffic convictions in district or municipal court; (3) neither petitioner was represented by counsel in any of these proceedings; and (4) the petitioners pleaded guilty in each case without advice of counsel. Nevertheless, the trial court concluded that constitutional or statutory defects in the underlying convictions did not invalidate those convictions for the purposes of a habitual traffic offender action. The court entered judgment that each petitioner was a habitual traffic offender and suspended the right of each to drive for a period of 5 years. RCW 46.65.060.

The Court of Appeals affirmed the trial court, holding that a habitual traffic offender proceeding under RCW 46.65 is "separate from the original driving convictions and may not be collaterally attacked" therein. *State v. Ponce, supra* at 279. Each petitioner asserts that he should be able to collaterally attack the validity of his original traffic offense convictions at a habitual traffic offender proceeding because the underlying convictions were obtained without the constitutionally guaranteed representation of counsel.

## RIGHT TO COUNSEL

A threshold determination may be dispositive of the issue on appeal: whether defendants had a constitutional right to counsel in the underlying proceedings. Both defendants were tried for offenses for which imprisonment was *authorized* punishment. The record before this court indicates that the jail sentence was *actually imposed* on only one occasion—Ozuna was sentenced to jail following an Oregon conviction for driving while intoxicated. The

prosecutor, the trial court, and the Court of Appeals proceeded on the assumption that each defendant had a constitutional right to counsel at the trial of his underlying traffic convictions ostensibly under *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972), and its progeny.

In *McInturf v. Horton*, 85 Wn.2d 704, 538 P.2d 499 (1975), this court construed JCrR 2.11(a), adopted to comply with *Argersinger*, as affording a right to counsel in misdemeanor cases wherein conviction may result in loss of liberty. JCrR 2.11(a)(1) provides:

> The right to counsel shall extend to *all* criminal proceedings for offenses *punishable* by loss of liberty regardless of their denomination as felonies, misdemeanors, or otherwise.

(Italics ours.) Emphasizing the italicized language, the *McInturf* court held that the right to counsel extends to all criminal proceedings for offenses punishable by loss of liberty "whether or not they are so *punished.*" *McInturf*, at 705. The court specifically rejected the idea of conditioning the right to counsel upon the trial court's pretrial determination that punishment would be imposed.

■■ In the recent decision of *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979), however, the United States Supreme Court adopted a more restrictive interpretation of the Sixth Amendment right to counsel in misdemeanor cases. The majority rejected the "authorized imprisonment" rule, and held that the constitutional right to counsel attaches only when "actual imprisonment" results:

> Even were the matter *res nova*, we believe that the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.

*Scott*, at 373.

As actual imprisonment was not imposed for any of the traffic convictions sustained by Ponce, there was no constitutional violation under *Scott*. As discussed above, under our court rule, JCrR 2.11(a), the right to counsel extends to any case "punishable" by loss of liberty. Nevertheless, we have said that a final judgment may be vacated during a collateral proceeding only by demonstrating that it is void. *Bresolin v. Morris*, 86 Wn.2d 241, 245, 543 P.2d 325 (1975). Violation of a *court rule* that does not reach constitutional magnitude provides an insufficient basis to collaterally attack Ponce's convictions for underlying traffic offenses.

In one instance, however, Ozuna was not informed of his right to counsel in a case resulting in a jail sentence, thus he was denied his constitutional right under *Scott*.[3] Therefore, we reach the issue of whether this *constitutional* defect in an underlying traffic conviction renders the judgment void and subject to collateral attack in a habitual traffic offender proceeding.

## COLLATERAL ATTACK

The Court of Appeals relied upon *State v. Petersen*, 16 Wn. App. 77, 553 P.2d 1110 (1976), for the proposition that original traffic convictions are not subject to collateral attack in the independent habitual traffic offender proceeding. In *Petersen*, licenses had been summarily suspended by the Department of Motor Vehicles. Subsequently, each defendant accumulated several convictions for driving while his license was suspended. The State filed habitual traffic offender actions. The Court of Appeals held defendants could not attack the impropriety of the *summary* license

---

[3]The prosecutor does not dispute the finding that Ozuna was indigent and was not informed of his right to counsel. The abstract of Ozuna's driving record indicates that he was convicted in district court in Oregon for driving under the influence, for which he was sentenced to jail in December 1974. RCW 46.65.020(2) provides that the enumerated offenses include offenses under "any law of another state, including subdivisions thereof, substantially conforming to the aforesaid state statutory provisions."

suspensions, assertedly in violation of due process guaranties under *Bell v. Burson,* 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971):

> The traffic charges could perhaps have been defended on that ground at trial or challenged on direct appeal, but are not subject to collateral attack in a separate habitual offender proceeding.

*Petersen,* at 80.

██ At issue in the instant case is whether uncounseled post–*Argersinger* traffic convictions can be considered in habitual traffic offender proceedings. In *State v. Francis,* 85 Wn.2d 894, 540 P.2d 421 (1975), this court addressed the issue of whether uncounseled pre–*Argersinger* convictions for traffic offenses could be considered in license revocation proceedings under RCW 46.65. The court held at page 896 that *Argersinger* did not bar use of such convictions:

> [A]ny uncounseled conviction in any appellant's driving history is too far removed to invalidate the habitual traffic offender proceeding. . . .
>
> . . . Further, such proceedings, even if termed a collateral consequence of accumulated driving convictions, must be viewed as a consequence that is indirect and removed, both in time and in purpose, from the original driving convictions of the offender.

The *Francis* court reiterated that revocation proceedings are civil, not criminal, with a purpose other than punishment. *See State v. Scheffel,* 82 Wn.2d 872, 514 P.2d 1052 (1973); *Flory v. Department of Motor Vehicles,* 84 Wn.2d 568, 527 P.2d 1318 (1974).

Neither *Petersen* nor *Francis* is dispositive of the issue presently before the court. Because the instant convictions do not involve the retroactive application of *Argersinger,* *Francis* is inapplicable. In *Petersen,* the defendants did not collaterally attack the proceedings in which underlying traffic convictions were rendered. Rather, defendants' collateral attack was against the prior administrative suspension procedure, not a criminal proceeding. Here, the constitutional violation involves the failure to advise a

criminal defendant of the right to counsel. The constitutional right to counsel is a categorical requirement necessary to give substance to other constitutional procedural protections afforded criminal defendants. *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963).

We are cognizant that other jurisdictions have held that underlying traffic convictions are not susceptible to collateral attack in habitual traffic offender proceedings under similar statutes.[4] We find the reasoning of such cases unpersuasive when the constitutional right to counsel has been denied. We further recognize that a habitual traffic offender proceeding is a civil action with the laudable purpose of barring from the highways drivers who are deemed to represent a peril and hazard to the motoring public. *State v. Francis, supra* at 896–97. The fact that a habitual traffic offender proceeding is civil, however, neither excuses the failure of the court to advise a defendant of the constitutional right to have counsel at the earlier *criminal* proceeding nor does it validate the underlying conviction following therefrom.

We hold that a traffic conviction constitutionally invalid under *Argersinger,* as refined by *Scott,* may not be considered in a subsequent habitual traffic offender proceeding. Such a conviction is void and subject to collateral attack. *Cf. Haislip v. Morris,* 84 Wn.2d 106, 524 P.2d 405 (1974) (habitual criminal conviction). Thus, as to Ozuna, the habitual traffic offender decree lacked sufficient supporting convictions. *See State v. Robinson,* 117 N.H. 496, 374 A.2d 953 (1977).

The judgment of the Court of Appeals is affirmed as to Ponce and reversed as to Ozuna.

UTTER, C.J., and HOROWITZ and DOLLIVER, JJ., concur.

---

[4]*See, e.g., Tomlinson v. Texas Dep't of Pub. Safety,* 429 S.W.2d 590 (Tex. Civ. App. 1968); *Application of Hathcock,* 9 Ariz. App. 178, 450 P.2d 419 (1969); *Everhart v. State,* 563 S.W.2d 795 (Tenn. Crim. App. 1978).

BRACHTENBACH, J. (concurring; dissenting)—I concur with the holding in the *Ponce* case and dissent in the *Ozuna* case.

The issue is rather simple. May a defendant in a habitual traffic offender proceeding attack the validity of one of the underlying traffic convictions collaterally on the basis that his right to counsel had been denied in the earlier proceeding?

There are several principles underlying the answer to that question. First, a collateral attack is permissible only if the judgment in the earlier proceeding is absolutely void. Such a judgment is void only where the court lacked jurisdiction of the party or the subject matter or lacked the inherent power to enter the particular order involved. *Bresolin v. Morris,* 86 Wn.2d 241, 245, 543 P.2d 325 (1975). No such deficiency is present here.

Second, as conceded by the majority, the rule of *McInturf v. Horton,* 85 Wn.2d 704, 538 P.2d 499 (1975), is not available in a collateral attack.

Third, for purposes of further action in criminal proceedings, the void only rule has been modified to allow a collateral attack for denial of a fundamental constitutional right, such as the right to counsel. *State v. Boyd,* 21 Wn. App. 465, 478, 586 P.2d 878 (1978).

None of the foregoing mandates the majority's holding in a civil proceeding like this habitual traffic offender action. Our holding in *State v. Francis,* 85 Wn.2d 894, 540 P.2d 421 (1975), is dispositive. There we said at page 896:

> Here, however, any uncounseled conviction in any appellant's driving history is too far removed to invalidate the habitual traffic offender proceeding. We also feel obliged to give serious weight to the very substantial State interest involved. The program of dealing with traffic offenders would be hampered were we to apply *Argersinger* [*Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972)] retroactively in all habitual traffic offender actions.

(Footnote omitted.) That *Francis* dealt with retroactive application of *Argersinger* is not a persuasive distinction.

The proceeding is still civil. For this purpose, the judgment is not void. The vital interest of the State is still present.

The majority opinion opens wide the door to the abuse and ultimate defeat of the purpose of the habitual traffic offenders act. Many of the convictions upon which the proceedings will rely will have been obtained in courts that do not maintain a record. Inherent in every proceeding will be the factual dispute as to whether the defendant was advised of his right to counsel, waiver of that right, and collateral issues which, if tried, would at best be unsatisfactorily resolved by testimony of the participants. The constitutional rights of the traffic offender arise in the traffic proceeding and their applicability should be raised or attacked therein. This civil proceeding is not the place to resolve such questions.

I would hold that *State v. Francis, supra,* supported by *State v. Petersen,* 16 Wn. App. 77, 553 P.2d 1110 (1976), is controlling, and would deny the collateral attack and affirm the Court of Appeals.

ROSELLINI, WRIGHT, and WILLIAMS, JJ., concur with BRACHTENBACH, J.

JOHNSON, J.* (concurring; dissenting)—I concur with the majority as to Ozuna and dissent regarding Ponce. I would reverse both convictions.

Each defendant was found to be a habitual traffic offender by virtue of the admission as evidence of three prior criminal traffic convictions over a period of less than 5 years. The mandatory consequence is that each defendant may not drive for a period of 5 years. RCW 46.65.060. If either does drive in violation of such status, he may be jailed for a period of up to 1 year. The majority opinion sets forth the facts concerning the stipulation as to the indigency of both defendants and the failure of the trial

---

*Judge Jerome M. Johnson is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. 4, § 2A (amendment 38).

court to grant the defendants counsel or to advise them of their rights to such.

The majority concludes that the constitutional right to counsel attaches only when *actual imprisonment* results rather than under circumstances in which *imprisonment is merely authorized,* and that since Ozuna served a day in jail under one of the subject traffic convictions, such uncounseled conviction was void and collaterally attackable in the habitual traffic offender proceedings. Ponce is denied the right to challenge such convictions because he served no jail term.

Jail time was authorized as to each traffic violation of Ozuna *and* Ponce. I would hold that under article 1, section 22 of the Washington State Constitution *all* uncounseled traffic convictions in which imprisonment is authorized are either void or unworthy of evidentiary force in habitual traffic offender proceedings and may be challenged by collateral attack in such proceedings. *See Scott v. Illinois,* 440 U.S. 367, 59 L. Ed. 2d 383, 390, 99 S. Ct. 1158 (1979), (Brennan, Marshall, and Stevens, JJ., dissenting). Such a rule and the analysis supporting it make good sense, are predictable, workable and, above all, fair.

The sixth amendment to the United States Constitution states:

> In *all* criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.

(Italics mine.) The principle applies to every state of the union. *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963).

Article 1, section 22 of the Washington State Constitution declares a similar right to counsel.

Consistent with this state constitutional provision this court promulgated JCrR 2.11(a)(1):

> The right to counsel shall extend to all criminal proceedings for offenses *punishable by loss of liberty* regardless of their denomination as felonies, misdemeanors, or otherwise.

(Italics mine.) The court unqualifiedly, clearly, and soundly confirmed the wisdom of that rule in *McInturf v. Horton,* 85 Wn.2d 704, 583 P.2d 499 (1975).

A key principle closely touching the facts before us was set forth in the landmark case *Argersinger v. Hamlin,* 407 U.S. 25, 34, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972):

> Beyond the problems of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.
>
> In addition, the volume of misdemeanor cases, far greater in number than felony prosecutions, may create an obsession for speedy dispositions, regardless of the fairness of the result.

In concurring with the result in *Argersinger,* Justice Powell foresaw the plight in which Ozuna and Ponce now find themselves:

> There may well be an unfair and unequal treatment of individual defendants, depending on whether the individual judge has determined in advance to leave open the option of imprisonment. Thus an accused indigent would be entitled in some courts to counsel, while in other courts in the same jurisdiction an indigent accused of the same offense would have no counsel. *Since the services of counsel may be essential to a fair trial even in cases in which no jail sentence is imposed,* the results of this type of pretrial judgment could be arbitrary and discriminatory.

(Italics mine.) *Argersinger,* at 54.

> *Serious consequences also may result from convictions not punishable by imprisonment.* Stigma may attach to a drunken–driving conviction or a hit–and–run escapade. *Losing* one's driver's license is more serious for some individuals than a brief stay in jail. . . . When the deprivation of property rights and interests is of sufficient *consequence,* denying the assistance of counsel to indigents who are incapable of defending themselves is a denial of due process.

(Italics mine.) *Argersinger,* at 48.

I agree. This court has enunciated that the right to counsel is a cornerstone of the judicial process when vital interests of each citizen are involved. I regret the majority's apparent withdrawal from what I consider to be the philosophically sound position taken by the court in *McInturf v. Horton, supra.*

Moreover, I believe there are valid reasons for making distinctions between rules applicable in a habitual offender proceeding and those applicable in cases in which a defendant fails to appeal from a conviction involving known consequences and later challenges the conviction. In a habitual offender proceeding, special attention should be given to the fact that the underlying convictions may not have been appealed, not only because the indigent defendant lacked counsel to assist him, but also because at the time of the earlier convictions their known consequences, namely, fines or short jail terms, were not seen as overly burdensome. When, however, the defendant is later faced with the revocation of his driver's license for a 5–year period, the seriousness of that deprivation may cause him to be more active in his own defense and to challenge the earlier convictions. Just because a defendant did not challenge his earlier convictions at the time they were entered should not increase their validity or render them invulnerable to collateral attack.

I would therefore allow Ponce as well as Ozuna the right to challenge collaterally the applicability of the underlying traffic convictions in the habitual traffic offender proceedings and would reverse both convictions. Such an interpretation of a state constitutional provision on independent state grounds is not without precedent. *See State v. Robinson,* 117 N.H. 496, 374 A.2d 953 (1977).