[No. 9937–0–I.  Division One.  April 27, 1983.]

RICHARD CHARLES DURFEE, *Respondent,* v. THE DEPARTMENT OF LICENSING, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Robert P. Manos, Assistant,* for appellant.

*Wurdeman & Tesch* and *Don Tesch,* for respondent.

DURHAM, J.—The State appeals from an order of summary judgment dismissing its suspension of Richard Durfee's driver's license under Washington's habitual traffic offenders act, RCW 46.65.

On June 6, 1980, after holding an administrative hearing, the Department of Licensing (Department) entered an order revoking Durfee's driving privileges for a period of 5 years, pursuant to RCW 46.65, the Washington habitual traffic offenders act. The administrative hearing officer found that Durfee was a habitual traffic offender because Durfee's driving record showed that he had accumulated 20 or more convictions in the operation of a motor vehicle within a 5–year period.[1]

---

[1] RCW 46.65.020 provides in pertinent part:

Durfee appealed the Department's order to the Snohomish County Superior Court, pursuant to RCW 46.65-.065(4). He then moved for summary judgment, claiming that he did not fall within the statutory definition of a habitual traffic offender. Durfee pointed out that several of the convictions on his driving record were for defective equipment and could not be used as a basis for declaring him a traffic offender. The trial court agreed, and held that Durfee's defective equipment convictions could not be counted as "moving violations".[2] Accordingly, it found that Durfee did not have enough convictions to be adjudged a habitual traffic offender under RCW 46.65.020(2). The State appeals the trial court's decision.

This case presents a question of first impression in Washington: should "defective equipment" convictions be considered as moving violations for the purpose of declaring someone a habitual traffic offender? We hold that a defective equipment violation comes within RCW 46.65.020(2), and that the trial court erred in reversing the Department's

---

"As used in this chapter, unless a different meaning is plainly required by the context, an habitual offender shall mean any person, resident or nonresident, who has accumulated convictions or findings that the person committed a traffic infraction . . . for separate and distinct offenses as described in either subsection (1) or (2) below committed within a five–year period, as evidenced by the records maintained in the department of licensing:

". . .

"(2) Twenty or more convictions or findings that the person committed a traffic infraction for separate and distinct offenses, singularly or in combination, in the operation of a motor vehicle which are required to be reported to the department of licensing other than the offenses of driving with an expired driver's license and not having a driver's license in the operator's immediate possession. Such convictions or findings shall include those for offenses enumerated in subsection (1) above when taken with and added to those offenses described herein but shall not include convictions or findings for any nonmoving violation. No person may be considered an habitual offender under this subsection unless at least three convictions have occurred within the three hundred sixty–five days immediately preceding the last conviction."

[2]The term "moving violation" is neither defined by the Legislature nor by Departmental regulation. It is used herein to denote offenses other than "nonmoving violations". *See* RCW 46.65.020(2); State Register 82–03–046 (1982) (new section WAC 308–104–160).

order.

██ ██ The purposes of the habitual traffic offenders act are clearly stated in RCW 46.65.010,[3] and may be summarized as follows: first, to maximize highway safety; second, to deny the privilege of driving to those who disregard the safety and welfare of others and the laws of the State; and third, to deter repetition of criminal acts. When considering Washington's habitual traffic offenders act, our Supreme Court found that:

> [T]he suspension or revocation of a driver's license is not penal in nature and is not intended as punishment, but is designed solely for the protection of the public in the use of the highways.

*State v. Scheffel,* 82 Wn.2d 872, 879, 514 P.2d 1052 (1973), *appeal dismissed,* 416 U.S. 964, 40 L. Ed. 2d 554, 94 S. Ct. 1984 (1974). The court also noted that:

> The privilege to operate an automobile is a valuable one and may not be unreasonably or arbitrarily taken away; however, the enjoyment of the privilege depends upon compliance with the conditions prescribed by the law and is always subject to such reasonable regulation and control as the legislature may see fit to impose under the police power in the interest of public safety and welfare.

*Scheffel,* at 880.

Our primary object in construing a statute is to effectuate legislative intent. *Gross v. Lynnwood,* 90 Wn.2d 395, 398, 583 P.2d 1197, 96 A.L.R.3d 187 (1978). In so doing, we must

---

[3]RCW 46.65.010 provides:

"It is hereby declared to be the policy of the state of Washington:

"(1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and

"(2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

"(3) To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws."

consider the statutory context as a whole. *Gross v. Lynnwood, supra.* RCW 46.65.020 is part of RCW Title 46, which contains provisions regulating the use of motor vehicles on Washington roads. A major focus of this legislation is the condition in which motor vehicles may be operated within the state.

In particular, RCW 46.37 is devoted to requirements of proper vehicle lighting and other equipment such as brakes, horns, mirrors, windshields, and seat belts. Moreover, RCW 46.37.005 establishes a commission on equipment. The commission has

> the power and duty to adopt, apply and enforce such reasonable rules and regulations . . . (3) relating to the enforcement of the provisions of this title with regard to vehicle equipment, as may be deemed necessary for the public welfare and safety . . .

The commission has promulgated 42 pages of regulations outlining additional requirements for towing devices, lamp installation, brake systems, exhaust systems, glass installation, and license plate display. *See* WAC 204–70 through 204–990.

The overall tone of RCW 46.37 and its related administrative provisions is to ensure adequate vehicle standards and, thereby, enhance highway safety. RCW 46.37.010(1), for instance, furthers this goal by penalizing those who drive or move, or permit to be driven or moved, unsafe vehicles on highways. It is inconceivable that the Legislature provided standards for such features as headlights, mirrors and brakes, for any purpose other than the safe performance of vehicles while moving. This coincides with the objective delineated in the habitual traffic offenders act. *See* RCW 46.65.010. Being a safe driver includes maintaining a properly equipped vehicle. A determination that "defective equipment" offenses are violations directly related to the privilege of driving, therefore, is consistent with the policy of Washington's habitual traffic offenders act.

Finally, Durfee objects to the possibility that the owner

of a motor vehicle may become a habitual traffic offender on the basis of defective equipment convictions accumulated by another person who drives the owner's motor vehicle. RCW 46.65.020 indeed raises such a possibility. We do not, however, find this problematic. A motor vehicle with defective equipment is no less dangerous to members of the public merely because it is driven by someone other than its owner. In fact, whereas the owner of a defective motor vehicle may be able to partially compensate for the known deficiencies of a motor vehicle, the unwitting driver of the same vehicle may actually exacerbate potential hazards to himself and to others. Since the ultimate aim of the habitual traffic offenders act is to enhance the safety of Washington roads, it is appropriate that owners be held responsible for whatever dangers they loose on the highways, regardless of who sits in the driver's seat.

We reverse.

ANDERSEN, C.J., and WILLIAMS, J., concur.