[Nos. 6584–3–II; 6342–5–II.   Division Two.   October 5, 1984.]

RANDY BRUCE UPWARD, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. RANDY BRUCE UPWARD, *Appellant*.

*Lilah M. Amos,* for appellant (appointed counsel for appeal).

*Kenneth O. Eikenberry, Attorney General, Joyce R. Dolliver, Assistant, Michael G. Spencer, Prosecuting Attorney,* and *W. David Rovang, Deputy,* for respondents.

PETRICH, C.J.—Consolidated appeals by Randy Bruce Upward, one challenging his conviction for operating a motor vehicle while his license was revoked in violation of RCW 46.65.090[1] and the other challenging the denial of a writ of mandamus to direct the Department of Licensing to issue him a driver's license, raise but one issue: whether an adjudication that one is a habitual offender as defined in the Washington Habitual Traffic Offenders Act, RCW 46.65, can be challenged successfully in a later civil or criminal proceeding by collaterally attacking the validity of the requisite number of traffic infractions relied upon to establish habitual offender status. We affirm, holding that such earlier adjudication cannot be so challenged.

Between April 22, 1977 and February 27, 1980, Upward was convicted of eight serious traffic infractions: six driving while license suspended, one driving under the influence of intoxicants, and one driving under the influence—reckless driving. All but one conviction were based on guilty pleas. On or about March 17, 1980, the Department prepared an order of revocation. A copy of the order, together with a request for hearing form, was forwarded to Upward by certified mail. The return mail stub indicates that Upward received the notice, but he did not request a hearing. Effective April 16, 1980, Upward was declared a habitual traffic offender. Pursuant to RCW 46.65.060, the Department revoked his license for 5 years. He did not appeal.

On March 20, 1981, Upward operated a motor vehicle on the state highways. The State charged him with one count of violating RCW 46.65.090. Upward moved to dismiss the

---

[1]RCW 46.65.090 provides in relevant part:

"Unlawful operation of motor vehicle by habitual offender—Penalty. It shall be unlawful for any person to operate a motor vehicle in this state while the order of revocation remains in effect. Any person found to be an habitual offender under the provisions of this chapter who is thereafter convicted of operating a motor vehicle in this state while the order of revocation prohibiting such operation is in effect shall be guilty of a gross misdemeanor, the punishment for which shall be confinement in the county jail for not more than one year: . . ."

criminal charge and filed a separate petition for writ of mandamus against the Department, alleging that seven of the traffic convictions underlying his habitual traffic offender status were the result of uncounseled guilty pleas entered without being informed of the constitutional rights enumerated in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). In the criminal action, the State did not present any evidence in opposition to Upward's motion to dismiss, relying instead upon the order of license revocation and the stipulated fact that Upward was driving while license revoked. Denying his motion to dismiss, the court entered judgment and sentence on March 26, 1982. In the mandamus action, the court disregarded two of seven prior uncounseled convictions because Upward served jail time, but otherwise upheld the remaining five due to Upward's lack of evidence to support the invalidity of the pleas. Upward's petition for writ of mandamus was denied on July 30, 1982.

The Washington Habitual Traffic Offenders Act, RCW 46.65, in its present form, provides that when any person accumulates within a 5-year period three or more traffic offenses enumerated in RCW 46.65.020(1) (*e.g.,* driving under the influence of intoxicants or drugs, driving while license suspended), the Department issues a notice of revocation of the offender's driving privileges accompanied by a request form for a formal hearing. A hearing, if requested, is held before a hearing officer of the Department of Licensing. From the Department's final decision, the aggrieved party may seek de novo review in superior court. RCW 46.65.065(4).

Earlier Washington case law, reasoning that the habitual offender proceeding, as a consequence of the accumulated driving convictions, is indirect and removed both in time and purpose from such convictions, held that the underlying convictions were not susceptible to collateral attack in the habitual traffic offender proceedings.[2] However, our

---

[2] *See State v. Francis,* 85 Wn.2d 894, 540 P.2d 421 (1975); *State v. Scheffel,*

Supreme Court in *State v. Ozuna,* 93 Wn.2d 533, 611 P.2d 407 (1980) authorized a collateral attack on a post–*Argersinger, Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972), uncounseled traffic conviction resulting in a jail sentence at a hearing to determine habitual offender status. Deciding that a constitutional defect in an underlying traffic conviction renders the judgment void and subject to collateral attack, the court held at page 540:

> We further recognize that a habitual traffic offender proceeding is a civil action with the laudable purpose of barring from the highways drivers who are deemed to represent a peril and hazard to the motoring public. *State v. Francis,* [85 Wn.2d 894, 896–97, 540 P.2d 421 (1975)]. The fact that a habitual traffic offender proceeding is civil, however, neither excuses the failure of the court to advise a defendant of the constitutional right to have counsel at the earlier *criminal* proceeding nor does it validate the underlying conviction following therefrom.

In this appeal, Upward relies not on the fact that his underlying convictions were obtained without the benefit of counsel, but rather on the claimed invalidity of the guilty pleas of the underlying traffic convictions premised on *Boykin v. Alabama, supra.*

## MANDAMUS ACTION

■ The crux of this analysis is the remedy sought. A writ of mandamus is a statutory right of action available only when there is not a plain, speedy and adequate remedy in the ordinary course of law. RCW 7.16.170. Whether Upward had an adequate remedy necessarily poses the question whether his prior convictions could have been tested at the earlier license revocation hearing. If so, then by not requesting a hearing or pursuing an appeal therefrom he has waived his remedy and is precluded from attacking them by extraordinary writ. *See Bock v. State Bd. of Pilotage Comm'rs,* 91 Wn.2d 94, 586 P.2d 1173 (1978).

---

82 Wn.2d 872, 514 P.2d 1052 (1973), *appeal dismissed,* 416 U.S. 964, 40 L. Ed. 2d 554, 94 S. Ct. 1984 (1974).

A traffic conviction obtained in a proceeding where defendant is denied his constitutional right to counsel is subject to a collateral attack in a later proceeding to determine habitual offender status. *State v. Ozuna, supra.* A conviction based on a guilty plea of a defendant uninformed as to the nature and consequences of the plea and uninformed as to the constitutional rights waived by such a plea results in a denial of due process. Such a conviction is subject to attack in a later habitual criminal proceeding. *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

There is no cognizable difference between the right to counsel and the right to due process on the entry of a guilty plea. Both are of constitutional magnitude. A defendant is entitled to challenge on constitutional grounds the present use of the underlying traffic offenses in a hearing to establish habitual offender status.[3]

By holding that defendant is entitled to challenge the earlier traffic offenses at such a hearing, we do not necessarily imply that such a challenge would be successful. Just as the defendant in the companion case of *State v. Ozuna,* namely, *State v. Ponce,* 93 Wn.2d 533, 611 P.2d 407 (1980), was unsuccessful in his challenge to the validity of an uncounseled conviction of an earlier traffic offense, he was nevertheless permitted to challenge the earlier conviction in his habitual offender proceeding. Upward, having failed to avail himself of the opportunity of challenging the earlier offenses at the habitual traffic offender hearing, cannot now challenge them by extraordinary writ.

---

[3]Since *State v. Ozuna, supra,* the initial forum of the habitual offender hearing has been transferred from the superior court to the Department of Licensing. (Laws of 1979, ch. 62.) It is true that the Department is not the proper forum to judge the validity of prior pleas of guilt, as constitutional issues rest with the court. *See Bare v. Gorton,* 84 Wn.2d 380, 526 P.2d 379 (1974). *Accord, State v. Laughlin,* 634 P.2d 49 (Colo. 1981) (administrative license revocation hearing is not the proper forum to relitigate the issue of guilt as to offenses shown in the record). However, under the present statutory scheme, the defendant had a right to appeal de novo to the superior court and is in no different position than the defendant in *State v. Ozuna, supra.*

#### DRIVING WHILE LICENSE REVOKED

Separate from the civil action to revoke the privilege of a driver's license is the criminal charge of unlawful operation of motor vehicle by a habitual offender, RCW 46.65.090. In the criminal charge, the State has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Cox,* 94 Wn.2d 170, 615 P.2d 465 (1980).

The State argues that it has satisfied its burden of proof by introducing the revocation order and the stipulated fact that Upward did drive while his license was revoked. It contends that the criminal charge against Upward was not a collateral consequence of the underlying traffic convictions. Rather, Upward need only violate the revocation order to fall within the prohibition of RCW 46.65.090. Thus, the traffic convictions are too remote to be attacked collaterally at the criminal trial.

Upward attempts to draw an analogy between RCW 46.65.090 and a habitual criminal enhancement proceeding in which the State bears the burden of proving the voluntariness of a guilty plea once the defense raises the issue. *State v. Holsworth, supra.* He argues that if the State need merely rely upon the status determination, in which the traffic offender bears the burden of disproving the validity of the prior convictions, an element of the crime is presumed, thereby relieving the State of its burden of proof. We disagree.

■ Unlike the situation in *State v. Holsworth, supra,* we are not dealing with the present use of a claimed infirm plea in a present criminal proceeding. The defendant's crime is the operation of a motor vehicle while his license was revoked because of his status as a habitual offender. The prosecution need only establish the defendant's operation of a motor vehicle during the continued efficacy of the habitual offender determination and the ensuing license revocation. *See State v. Graham,* 14 Wn. App. 1, 538 P.2d 821 (1975). In such a situation the State is not required to prove the validity of the traffic offenses upon which the

status of traffic offender status is based.[4] The State has carried its burden of proving the elements of the crime. We affirm.

REED and WORSWICK, JJ., concur.

[4]This rule is in accord with other jurisdictions. *See Hensley v. Ranson*, 373 F. Supp. 88 (E.D. Va. 1974); *Whorley v. Commonwealth*, 215 Va. 740, 214 S.E.2d 447 (1975); *Mays v. Harris*, 523 F.2d 1258 (4th Cir. 1975); *State v. Boos*, 232 Kan. 864, 659 P.2d 224 (1983). *But cf. People v. DeLeon*, 625 P.2d 1010 (Colo. 1981), and the cases cited in *State v. Laughlin, supra*.