**Charles R. EVERHART, alias, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Jan. 10, 1978.

Certiorari Denied by Supreme Court April 10, 1978.

Robert L. Tucker, Robert L. DeLaney, Martha Meares, Richard McGee, University of Tennessee Legal Clinic, Knoxville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., William Raikes, Research Asst., Nashville, Ronald A. Webster, Dist. Atty. Gen., William H. Crabtree, Asst. Dist. Atty., Knoxville, for appellee.

## OPINION

TATUM, Judge.

The defendant appeals from a judgment rendered by the Criminal Court of Knox County declaring him to be an habitual offender under the Motor Vehicle Habitual Offenders Act. (T.C.A. §§ 59–1201—59–2117). Defendant was precluded from operating a motor vehicle on the highways of this state and ordered to surrender his motor vehicle operator's license. (T.C.A. § 59–2113)

At the hearing afforded the defendant, he conceded that he was convicted on three occasions for driving while intoxicated during a three-year period and that the offenses for which he was convicted were committed after April 5, 1974. His defense was that one or more of these convictions were void because he was not afforded counsel to represent him in the trial of the cases resulting in these convictions. The records evidencing the convictions reflected that the defendant had waived counsel for the trial of the driving while intoxicated cases. In the case *sub judice*, the Trial Judge refused to permit the defendant's testimony contradicting the judgments by stating that his waiver of counsel was not made understandingly and voluntarily.

In his assignments of error, the defendant urges that the Trial Judge erred in characterizing the proceeding as being civil in nature and in not admitting evidence attacking the validity of the prior convictions. These assignments are without merit.

In support of his contention that proceedings under the Motor Vehicle Habitual Offenders Act are criminal in nature rather than civil, the defendant argues that since the Act expressly bestows trial jurisdiction upon the criminal courts and appellate jurisdiction upon this court, this evinces a legislative intent that proceedings under the act are criminal in nature. We do not agree. The criminal courts and this court already had jurisdiction of criminal cases. The effect of these provisions in the Motor Vehicle Habitual Offenders Act was to bestow upon the criminal courts and this court additional civil jurisdiction that these courts would not have otherwise enjoyed.

The general scheme of the Motor Vehicle Habitual Offenders Act creates a proceeding to revoke the driving privileges of persons who have repeatedly violated designated State statutes or City ordinances. The purpose of the Act is to promote public safety. (T.C.A. § 59–2102). The Act does not declare either a fine or imprisonment for being an habitual offender. The only penal provision in the Act is T.C.A. § 59–2116 for driving in violation of a court order after a hearing and judgment. The defendant is not charged with the violation of the criminal statute.

The controlling principles are enunciated by the Supreme Court in *Sullins v. Butler et al.*, 175 Tenn. 468, 135 S.W.2d 930 (1940). In determining the constitutionality of Chapter 90, Public Acts of 1937, as amended by Chapter 205, Public Acts of 1939, familiarly known as the Financial Responsibility Law, the Tennessee Supreme Court held:

" Counsel for petitioner has misinterpreted the act. It contains no provision

authorizing imprisonment for failure to pay a judgment founded upon the negligent operation of an automobile. Should petitioner never pay the $162 judgment entered against him, he could at no time be imprisoned for such failure. The punishment prescribed in the act is for operating an automobile after the operator's driver's license has been revoked.

The driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare."

\* \* \* \* \* \*

" The general rule covering the subject is stated in 5 Am.Jur. 593, as follows: § 157. 'The statutes regulating the granting of operators' licenses or drivers' permits usually provide for their revocation. It is competent for the legislature to prescribe the conditions under which the privilege of operating an automobile on the public highways may be exercised. The fact that the license or permit was granted under a statute or ordinance which stated that it should be perpetual unless revoked as provided in such statute or ordinance, and which contained no provision for revocation, does not preclude revocation under a provision introduced by subsequent amendment.

'A license to operate an automobile is not property, but a mere privilege, the suspension of which does not deprive the licensee of his property without due process of law. The licenses or permits may not be revoked arbitrarily.

'The authority to revoke cannot be delegated to an official without prescribing what shall constitute grounds for revocation.' "

Also see Goats v. State, 211 Tenn. 249, 364 S.W.2d 889 (1963).

■ The Trial Judge properly characterized the proceeding in which the driving privilege of the defendant was revoked as civil in nature and not criminal. The purpose of the Act is to promote public safety on the highways. By revoking the driving privilege of the defendant, he is not subjected to punishment for either a felony or misdemeanor. He is not even deprived of a property right; he is only deprived of a privilege. Other states, having similar acts, have uniformly held proceedings to revoke or suspend driving privileges to be civil in nature and not criminal. See, State v. Bowles, 113 N.H. 571, 311 A.2d 300 (1973); State v. Carlisle, 285 N.C. 229, 204 S.E.2d 15 (1974); Huffman v. Commonwealth, 210 Va. 530, 172 S.E.2d 788 (1970). We hold the proceedings to revoke or suspend driving privileges are civil in nature and not criminal.

■ In his second assignment of error, the defendant complains of the refusal of the Trial Judge to permit him to attack the validity of the judgments by showing that his waiver of counsel was made involuntarily and unintelligently. The judgments were facially sufficient, showing a waiver of counsel. The defendant does not characterize his purported attack upon the validity of these judgments as collateral attacks but terms them as "direct attacks." The setting aside of the convictions of the General Sessions Court is a necessary, but only incidental, objective of the suit. As such, this is a collateral rather than a direct attack upon the convictions. Turner v. Bell, 198 Tenn. 232, 279 S.W.2d 71 (1955).

The general rule is that a conviction on which a suspension or revocation of a driver's license is based cannot ordinarily be attacked collaterally in a proceeding relating to a suspension or revocation. See, 60 C.J.S. Motor Vehicles § 164.10. The Court of Appeals of Arizona, In Application of Hathcock, 9 Ariz.App. 178, 450 P.2d 419 (1969), said:

"The purpose of this judicial proceeding is manifest. It is to avoid the revocation of an operator's license to drive a motor vehicle in this state. The setting aside of the conviction in the justice court is a necessary, but only incidental, objective of the suit. As such, this is clearly a 'collateral' rather than a 'direct' attack upon the judgment of conviction. (cita-

tions omitted). In *Schuster* [*Schuster v. Schuster* 51 Ariz. 1, 73 P.2d 1345 (1937)], our Supreme Court said:

'If the attack be collateral in its nature, an attack may not be made even on the ground of fraud; the only question being whether it is void upon its face.' (Citations omitted.)

The petitioner's proof clearly falls short of showing that this conviction was '* * * void upon its face.' No attempt was made to bring before the superior court the criminal docket of the justice court. The certificate of conviction appears to be without irregularity. It shows a plea of guilty on the part of the petitioner, a court finding of guilty as to a criminal charge within the jurisdictional limits of the justice court, and within the limits of penalty prescribed for the crime as to which the petitioner is certified to have been convicted." 450 P.2d 419, at 421–422.

The Texas Court of Appeals in *Tomlinson v. Texas Department of Public Safety,* 429 S.W.2d 590 (Tex.Civ.App.1968) first determined that cases involving criminal punishment or enhancement of criminal punishment were not applicable in those cases merely involving a defendant's driving privileges. The Court then adopted the following language:

"Although the record supporting a judgment may carry the seeds of infirmity that prove fatal to the judgment when exposed upon a direct attack or in a habeas corpus proceeding, it cannot be said that any and all persons may ignore the judgment before it is pronounced invalid or void by proper authority. In this case, the County Judge was not considering a direct attack or conducting a habeas corpus hearing and was no more authorized to ignore the judgments of convictions than would a prison warden be justified in discharging a prisoner before the judgment convicting such prisoner had been declared invalid by a court of competent jurisdiction. There are proper methods and competent tribunals to accomplish the destruction of judgments, but a collateral attack in a proceeding such as this

is not one of them." 429 S.W.2d 590, at 594.

For other holdings of like import, see *Cook v. Department of Motor Vehicles,* 33 Cal. App.3d 265, 109 Cal.Rptr. 104 (1973); *Texas Department of Public Safety v. Casselman,* 417 S.W.2d 146 (Tex.1967); *Director of Department of Public Safety v. Moore,* 54 Ala.App. 351, 308 So.2d 711 (1975); *Ritch v. Director of Vehicles and Traffic of District of Columbia,* 124 A.2d 301 (D.C.Mun.App. 1956).

The proper procedure for testing the validity of a facially valid conviction is by a separate proceeding for that purpose under the Post-Conviction Relief Act (T.C.A. §§ 40–3801 *et seq.*). This court has held that the Post-Conviction Relief Act is available for that purpose even when a petitioner's sentence has been served and he is not on parole. *Holt v. State,* 489 S.W.2d 845, 847 (Tenn.Cr.App.1972); *Daugherty v. State,* 4 Tenn.Cr.App. 355, 470 S.W.2d 865 (1971).

We hold that the Trial Judge was correct in not permitting the collateral attack on the prior convictions.

T.C.A. § 59–2103 defining an habitual offender, provides that certain convictions of violations of City Ordinances in city and municipal courts are embraced under the definition "Habitual Offenders." The same section defines a conviction as including a forfeiture of bail, which forfeiture has not been vacated. We do not imply that these forfeitures and municipal ordinance convictions are invalid if the defendant is not represented by an attorney. As stated, a proceeding under the Act is civil in nature. A defendant is not entitled to the constitutional safeguards in a civil case that he has a right to in a criminal case.

The defendant relies upon the United States Supreme Court cases of *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), and *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) in support of his contention that the Trial Judge erred in not permitting him to make a collateral attack on the validity of the

prior convictions. These cases are not applicable. *Burgett* is a criminal case involving facially void judgments. *Loper v. Beto, supra,* is a habeas corpus proceeding equivalent to a proceeding under the Tennessee Post-Conviction Relief Act.

The judgment of the Criminal Court is affirmed.