IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

FILED

December 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,                )
DEPT. OF HUMAN SERVICES,            )
ex rel,                            )
                                   )
ALBERTA BEARD,                     )
                                   )
        Plaintiffs/Appellees,      ) Fayette Juvenile No. 1778
                                   )
VS.                                ) Appeal No. 02A01-9806-JV-00159
                                   )
GILBERT FRANKLIN, III,             )
                                   )
        Defendant/Appellant.       )


APPEAL FROM THE JUVENILE COURT OF FAYETTE COUNTY
AT SOMERVILLE, TENNESSEE
THE HONORABLE J. WEBER McCRAW, JUDGE

**MARCUS M. REAVES**
Jackson, Tennessee
Attorney for Appellant


**JOHN KNOX WALKUP**
**Attorney General & Reporter**
**TAMMY L. KENNEDY**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for Appellees

**AFFIRMED**


**ALAN E. HIGHERS, J.**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

        Gilbert Franklin, III (Franklin) appeals the trial court's refusal to "set aside" its order

establishing paternity and child support. For the reasons hereafter stated, we affirm.

## I. Factual and Procedural History

On or about August 8, 1994, the State of Tennessee, Department of Human Services (DHS), filed a petition on the relation of Alberta Beard against Franklin. The petition alleged that Franklin was the father of Paul A. Beard, born April 1, 1985, and sought to establish paternity and child support. The case was heard by the Fayette County Juvenile Court on both January 14, 1997 and April 8, 1997, after which the trial court ordered and decreed that Franklin is the father of Paul A. Beard, that Franklin is obligated to support and maintain the child by the payment of $600 per month in child support, and that Franklin is obligated to pay an additional $400 per month in back support totaling $64,525.

In the record on appeal before this Court, a statement of the evidence sets forth the evidence that was presented to the trial court and the proceedings that occurred during the January 14, 1997 and April 8, 1997 hearings.[1] This statement provides as follows:

> A Petition for Paternity and Child Support was filed by the IV-D Child Support Office on behalf of Ms. Beard on August 8, 1994. Dr. Franklin was served with this Petition December 5, 1996.

> The Petition was heard January 14, 1997, at which time Dr. Franklin submitted to the jurisdiction of the Court and requested a blood test. Dr. Franklin told the Court that he was employed at the Mazda dealership at 12516 Gallatin Road in Madison, Tennessee. He also stated that his current address was 220 Gallatin Road, Madison, Tennessee. Dr. Franklin was ordered to appear back in Court April 8, 1997, for the blood test results. Dr. Franklin was also handed a Request for Production of Documents by the IV-D attorney on January 14, 1997, and was ordered to collect the requested information and to be prepared to present the documentation at the April 8, 1997 hearing.

---

1. After Franklin filed his Notice of Appeal with the trial court, he filed a "Summary of the Evidence" because no stenographic report, substantially verbatim recital, or transcript of the evidence or proceedings from the January 14, 1997 and April 8, 1997 hearings was available. Franklin, however, failed to comply with the requirements set forth in Rule 24(c) of the Tennessee Rules of Appellate Procedure. *Among other defects*, Franklin failed to serve "a short and plain declaration of the issues the appellant intends to present on appeal. Therefore, DHS moved to strike Franklin's statement. DHS also filed objections to Franklin's statement pursuant to Rule 24(c), requesting that the trial court approve a statement of the evidence that DHS submitted in place of Franklin's statement. The trial court settled all differences between Franklin and DHS regarding the statement by approving DHS's statement of the evidence and striking Franklin's statement. Pursuant to Rules 24(c) and (e), the trial court's determination concerning the differences between Franklin and DHS over the statement is conclusive absent extraordinary circumstances. Tenn. R. App. P. 24(e). Moreover, we have not been presented with any explanation of extraordinary circumstances that might warrant consideration of any evidence other than that found within the statement of the evidence that was approved by the trial court.

At the hearing on April 8, 1997, the Court asked Dr. Franklin if he had an attorney. Dr. Franklin stated that he could not afford one. The Judge informed Dr. Franklin that the Court could not appoint an attorney in a paternity action.

The results of the blood test were presented to the Court showing a 99.25% probability of paternity. Dr. Franklin then stated that he did not want to contest the blood test results and admitted paternity. The Court then proceeded with the hearing on the merits.

Dr. Franklin was put under oath and took the witness stand. When questioned about his current address, he testified that he had erroneously stated his address on January 14, 1997, and that his address is 220 E. Palestine Street, Madison, Tennessee.

Dr. Franklin testified that he was unemployed. He stated that he had been fired four months earlier for not selling enough cars. He was questioned about the discovery information requested in January, 1997. He testified that he did not bring the information requested. He provided W-2 forms from two employers in 1996 totaling $14,246. He was not at either employer for the full year of 1996. He testified that he had not filed his income taxes for 1996.

When questioned about his employment for prior years, Dr. Franklin testified that he was a practicing dentist but lost his license in 1994 because he was charging too much on insurance claims. He testified that he did not work at all in 1995. When questioned about how he supported himself in 1995, he testified that he had saved up some money and was using this money. He testified that he saved approximately $5,000. When questioned about the name of the bank he used to keep this money, Dr. Franklin stated that he did not have this money in a bank. When questioned about the bank he used for his dental practice, he testified that he did not remember the bank he used but that it was in Hopkinsville, Kentucky. He also testified that he did not remember the name of the bank he used when he had his dental practice in Memphis, Tennessee.

. . . .

When questioned about the car he drives, he testified that he is driving a 1979 Cadillac Seville. He testified that this car was owned by his mother. When questioned about the other cars owned by his mother, he testified that his mother drove a 1963 Ford and also owns a 1977 Lincoln Continental, a 1985 Mercedes, a 1984 Mercedes, as well as the 1979 Cadillac Seville he was driving. He stated, however, that his mother was unemployed and retired. When questioned about how she obtained all of these cars, he stated that she bought them. He was asked who she bought the 1984 Mercedes from and he stated from the car dealership. He was asked if he gave her the 1984 Mercedes and he said no. He was asked if he sold her this car and he said he probably sold it to her. When asked how much he received from this sale, he stated it was a gift. The Judge then warned Dr. Franklin about being evasive in his answers and that he would be held in contempt if he did not take those questions seriously and answer appropriately.

Dr. Franklin also testified that he gave a friend, Annette Wakefield, a 1984 Mercury.

Dr. Franklin testified that he has no living expenses because he lives with "a friend." He stated that his only monthly expenses were clothes, gas, haircuts, and entertainment.

3

Dr. Franklin was questioned about other children. He testified that he had one seventeen-year-old son for whom he was paying $300.00 per month child support. However, Dr. Franklin did not present an order as requested in the January 1997 discovery request, and he did not mention this expense when he testified to his regular monthly expenses.

. . . .

Current child support was set based on Rule 1240-2-4-.03(3)(e) of the Child Support Guidelines, applicable when the obligor has not provided proof of his gross income (i.e., based upon gross income of $25,761 per year / $2,146.00 per month). Additional gross income was imputed to Dr. Franklin based on his testimony about the cars he had given away and due to his income potential. An additional $17.00 per month was added to reimburse Ms. Beard for medical insurance she pays for the child. Current child support was set at $600.00 per month.

Child support back to the date of the child's birth was set at $64,525.00. This was based on Rule 1240-2-4-.03(3)(e), as above, plus birthing expenses, plus additional imputed annual gross income based on the testimony of Dr. Franklin. Dr. Franklin was ordered to pay $400.00 per month toward the back support.

Subsequently, Franklin filed a motion entitled "Motion to Modify," wherein he prayed for the trial court to "set aside" the order establishing paternity and child support.[2] This motion was denied by the trial court, however, and Franklin appealed. As required by Rule 3(f) of the Tennessee Rules of Appellate Procedure, Franklin designated in his Notice of Appeal the judgment or order from which he appealed, specifying the order denying his "Motion to Modify."

For Franklin's statement of the issues presented for review, he states:

1. The rules of civil procedure should apply in the juvenile court proceedings; and

2. The trial court erred in refusing to set aside its orders.

## II. Whether the Rules of Civil Procedure Govern Paternity Actions

Though we will incidentally address Franklin's first issue in our subsequent analysis of whether the trial court erred in denying Franklin's post-judgment motion, Franklin's argument relating to his first issue does not comply with Rule 6(a) of the Tennessee Rules

---

2. Though no such motion is provided for under the Tennessee Rules of Civil Procedure. We construe such motion as being, in substance, a motion to alter or amend pursuant to Rule 59.04.

of the Court of Appeals.  Rule 6(a) provides, in part:

> Written argument in regard to each issue on appeal shall contain:
>
>   1.  A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
>
>   2.  A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
>
>   3.  A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

Tenn. R. Ct. App. 6(a).  First, Franklin's argument on this issue does not assert any erroneous action of the trial court that raises the issue.  Stated otherwise, Franklin's argument on the issue has not referred us to any instance where the trial court did not adhere to the rules of civil procedure.  Second, Franklin's argument on this issue does not refer us to any instance where any alleged failure to adhere to the rules of civil procedure "was seasonably called to the attention of the trial judge."  In fact, the record on appeal is devoid of any specific reference to the adherence or lack of adherence to the rules of civil procedure.  Third, Franklin's argument on this issue does not explain how he was prejudiced by an alleged failure to adhere to the rules of civil procedure.

### III.  Whether the trial court erred in denying Franklin's "Motion to Modify"

#### A.  Insufficiency of Process and/or Service of Process

In Franklin's post-judgment motion, he asserted that he was never served with a copy of the petition, though he was served with a summons. Accordingly, in the instant appeal, Franklin contends that process and/or service of process was insufficient.[3]  At the

---

3.  Franklin also asserts in his brief that process and/or service of process was insufficient because:

   1.  The petition in the record is not stamped "filed";
   2.  The summons did not bear the court file number and address of the petitioner's attorney, and did not advise that failure to attend will result in a default judgment (as contemplated by Rule 4.02 of the Tennessee Rules of Civil Procedure); and
   3.  The summons was not served within thirty days of issuance (as contemplated by Rule 4.03 of the rules of civil procedure).

These issues were not raised in Franklin's post-judgment motion, which is the only issue that Franklin has

time Franklin was served with process, the applicable statute governing the commencement of paternity actions established that, after the action was commenced by the filing of a petition, the trial court shall issue an arrest warrant, but that "a summons may be issued as in civil cases." Tenn. Code Ann. § 36-2-103 (1996).[4] In the instant case, an arrest warrant was not issued but, instead, a summons was issued and served.

Effective July 1, 1984, Rule 1(b) of the Tennessee Rules of Juvenile Procedure established "The Tennessee Rules of Civil Procedure shall govern all paternity cases," except that "discovery in such cases in juvenile court shall be governed by Rule 25" of the rules of juvenile procedure. Tenn. R. Juv. P. 1(b).[5] Because the rules of civil procedure govern paternity cases (except as may be otherwise provided by law), Rule 12 of the rules of civil procedure, which pertains in part to defenses and objections, is applicable to the paternity case *sub judice*. Rule 12.02 provides for various defenses that a defendant can raise, including insufficiency of process and/or insufficiency of service of process. See Tenn. R. Civ. P. 12.02. These two defenses (insufficiency of process and/or insufficiency of service of process), along with certain other defenses, are expressly waived, however, if they are not presented either by motion before pleading or in the party's answer or reply, as required under Rules 12.02 and 12.08. See Tenn. R. Civ. P. 12.02, 12.08.

In this case, Franklin voluntarily appeared for the January 14, 1997 hearing. Further, he did not raise the issue of sufficiency of process or the issue of sufficiency of service of process at either the January hearing or the April 8, 1997 hearing. Though the statement of evidence before this Court does not specifically establish that Franklin pled

brought before this Court. Moreover, these issues were not raised at *any* point in the trial court, and issues not raised at trial may not be raised for the first time on appeal. Simpson v. Frontier Community Credit Union, 810 S.W.2d 147, 153 (Tenn.1991); Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn.1983). As will be explained below with reference to the sufficiency of process issue that is before this Court, however, our affirmance of the trial court would be unchanged even if these issues had been raised before this Court.

4. Section 36-2-103, along with all of Title 36, Chapter 2, Part 1, has since been repealed. Tennessee's current paternity statutes are now codified in Title 36, Chapter 2, Part 3, and the current statute governing the commencement of paternity actions is codified as section 36-2-305. Today, paternity actions are commenced either by service of a summons or by delivery of a notice of filing of the complaint to the defendant, to his or her representative, or to the defendant at his or her last known address. Tenn. Code Ann. § 36-2-305(b) (Supp. 1998). The court *may* issue an arrest warrant only *if* the defendant fails to make an appearance or file an answer to the complaint. Id. § 36-2-305(b)(5).

5. Effective July 1, 1997, Tennessee Code Annotated section 36-2-305(b) likewise establishes that the Tennessee Rules of Civil Procedure shall govern all paternity actions. See Tenn. Code Ann. § 36-2-305(b).

by denying paternity in the earlier January hearing, Franklin's denial of paternity is evident from Franklin's request for a blood test. Moreover, the record clearly establishes that Franklin pled at the subsequent April hearing by admitting paternity. Franklin did not raise the issue of sufficiency of process until *after* both the January and April hearings and after entry of the trial court's order establishing paternity and child support. *For the first time*, Franklin's post-trial motion alleged that he was never served with the petition in this case. Having failed to raise the issue of sufficiency of process until after the hearings and entry of the trial court's order, Franklin waived any objection or defense he might have otherwise raised based on sufficiency of process. See Dixie Savings Stores, Inc. v. Turner, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988); Grosfelt v. Epling, 718 S.W.2d 670, 672 (Tenn. Ct. App. 1986); Tennessee v. Daniel, 659 S.W.2d 625, 626 (Tenn. Ct. App. 1983). See also United States v. Gajewski, 419 F.2d 1088 (8th Cir. 1969) (appellants contended that the summons was not issued and served as set forth by Rule 4, and the court, following the similar federal Rule 12(h), concluded that the appellants' voluntary appearance at a hearing and failure to raise the defense or object waived the issue), *cert. denied* 397 U.S. 1040 (1970).

## B. Appointment of Counsel

In Franklin's brief, he contends, "[a] paternity action, civil in nature, is also criminal in nature in that one's liberty can be taken away, [and] [t]he Court should have treated Appellant as indigent . . . and appointed an attorney to represent him . . . ." This issue was not raised in Franklin's post-judgment motion, however, which is the only matter that Franklin has raised before this Court. Moreover, Franklin has failed to cite any legal authority in his brief to support his contention, which waives our consideration of this issue.[6] See Rampy v. ICI Acrylics, Inc., 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994);

---

6. We do note, however, that the Tennessee Supreme Court recognized paternity actions under Tennessee law to be "quasi-criminal in character" in Patrick v. Dickson, 526 S.W.2d 449, 451 (Tenn. 1975). This observation in Patrick was made at a time when the rules of civil procedure were inapplicable to paternity actions and was based upon the fact that paternity actions were (formerly) commenced by an arrest warrant. Id. at 450-51. The instant case, however, was not commenced by an arrest warrant, but was, instead, commenced by the service of a summons. Therefore, Franklin cannot maintain that he was deprived of any liberty interest via an arrest warrant. Furthermore, the supreme court subsequently recognized that fathering an illegitimate child is not a criminal offense and that paternity actions under Tennessee law are *civil* in nature. Wilkerson v. Benson, 542 S.W.2d 811 (Tenn. 1976). In Wilkerson v. Benson, a defendant attempted to

7

Wilhite v. Brownsville Concrete Co., 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). See also Tenn. R. App 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on . . . .")

### C. Child Support Guidelines

One contention raised in Franklin's brief and arguably raised in his post-judgment motion is that "The Juvenile Court ordered support not in accordance with the guidelines . . . ." Tennessee rules and regulations governing child support establish the following:

> (d) If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience.
>
> (e) When establishing an initial order and the obligor fails to produce evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years), and the court has no other reliable evidence of the obligor's income or income potential, gross income for the current and prior years should be determined by imputing annual income of $25,761. This figure represents an average of the median annual income for Tennessee families as provided by the 1990 U.S. Census of Income and Poverty data for Tennessee Counties.

Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1994). Before proceeding further, we note that the statement of the evidence in this case states that child support was initially set based upon subsection (e) quoted above. Further, we note that, in addition to the $25,761 gross income that was imputed to Franklin pursuant to subsection (e), *additional* income was imputed to Dr. Franklin based upon "the cars he had given away and due to his income potential," and an additional $17.00 per month was added to reimburse Ms. Beard for medical insurance.

The statement of the evidence demonstrates that Franklin was "willfully and

---

assert a constitutional right against self-incrimination in a paternity action and the supreme court held, "since the defendant [was] not subject to a prosecution based either upon paternity or fornication, he has no right to remain silent under the Fifth Amendment, and may not assert any privilege against testifying on that basis." Id. at 813. As in Wilkerson, Franklin in this case was not being subjected to a criminal prosecution and the paternity action was civil in nature. Prior Tennessee case law has recognized that there is no absolute right to counsel in a civil trial. Presley v. Hanks, 782 S.W.2d 482, 485 (Tenn. Ct. App. 1989); Lyon v. Lyon, 765 S.W.2d 759, 763 (Tenn. Ct. App. 1988); Davis v. Arthur, 673 S.W.2d 512, 515 (Tenn. Ct. App. 1983). See also Thornburgh v. Thornburgh, 937 S.W.2d 925, 926 (Tenn. Ct. App. 1996); Everhart v. Tennessee, 563 S.W.2d 795, 798 (Tenn. Crim. App. 1978) ("A defendant is not entitled to the constitutional safeguards in a civil case that he has a right to in a criminal case.").

voluntarily unemployed or underemployed" as contemplated by section (d) above. Among other things, he was unemployed, did not work for the full year of 1996, and did not work at all in 1995. Therefore, actual income could not be used as a basis of computing child support. However, the statement of the evidence further demonstrates that the trial court had no reliable evidence of Franklin's income or income potential. Therefore, the trial court appropriately relied upon subsection (e) to impute $25,751 gross income.

*After* gross income is calculated and child support is determined based upon a percentage of income in accordance with the Child Support Guidelines, Tennessee rules and regulations further establish that courts shall increase child support awards for the following reasons, among others:

> (a) If the obligor is not providing health insurance for the child(ren), an amount equal to the amount necessary for the obligee to obtain such insurance shall be added to the percentage calculated in the above rule.
> . . . .
> (f) Valuable assets and resources (expensive home or automobile which seem inappropriate for the income claimed by the obligor) of the obligor should be considered for the purpose of imputing income and increasing the support award in any case if the court finds that equity requires it.

Tenn. Comp. R. & Regs. 1240-2-4-.04(1) (1997). Accordingly, we find no error in the trial court's upward adjustment in child support based on the valuable assets (cars) that Franklin had owned and based on $17.00 per month to reimburse Ms. Beard for medical insurance.

## D. Genetic Tests

In the "argument" set forth in Franklin's brief, he contends, "his right to prior notice [of the genetic test results] to enable him to defend himself at the hearing was infringed." This issue was not raised at *any* point in the trial court, however, and may not be raised for the first time on appeal.[7] Simpson v. Frontier Community Credit Union, 810 S.W.2d 147, 153 (Tenn.1991); Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn.1983). Moreover,

---

7. We note, however, that in Tennessee v. Garrett, No. 01A01-9506-JV-00262 (Tenn. App. May 15, 1996), which is an unreported opinion by this Court, a defendant in a paternity action similarly contended that he received insufficient notice of genetic test results prior to a hearing. This court found the defendant's contention to be without merit, however, because the defendant could have sought a continuance but failed to do so. Similarly, in this case, Franklin did not seek a continuance. In fact, when Franklin learned of the test results, he simply admitted paternity.

though it appears to this Court that Franklin apparently relies upon Tennessee Code Annotated section 24-7-112(b)(2)(A) for his assertion of insufficient notice,[8] Franklin has failed to cite any legal authority in his brief to support his contention, which waives our consideration of this issue. See Rampy v. ICI Acrylics, Inc., 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); Wilhite v. Brownsville Concrete Co., 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). See also Tenn. R. App 27(a)(7).

## V. Conclusion

Based upon the foregoing, we hereby affirm the trial court. Costs of this appeal are taxed to Franklin, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S

_____
LILLARD, J.

_____

8. Tennessee Code Annotated section 24-7-112(b)(2)(A) provides, "In any proceeding where the paternity of an individual is at issue, the written report of blood, genetic, or DNA test results by the testing agent concerning the paternity is admissible without the need for any foundation testimony or other proof of the authenticity or accuracy of the test unless a written objection is filed with the court and served upon all parties thirty (30) days prior to the date of the hearing. Tenn. Code Ann. § 24-7-112(b)(2)(A) (Supp. 1998).