IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs May 10, 2017

## STATE OF TENNESSEE v. WILLIAM WAYLON HANSON

**Appeal from the Circuit Court for Marshall County**
**No. 2015-CR-97      Forest A. Durard, Jr., Judge**

_____

## No. M2016-00502-CCA-R3-CD

_____

A Marshall County Circuit Court Jury convicted the Appellant, William Waylon Hanson, of violating an order declaring him to be a motor vehicle habitual offender, failing to provide evidence of financial responsibility, and passing another vehicle in a no passing zone. On appeal, the Appellant contends that the trial court erred by granting the State's motion in limine to prohibit the Appellant from collaterally attacking the order declaring him to be a motor vehicle habitual offender, by limiting the defense's closing argument, and by admitting the Appellant's driving record into evidence through an employee of the Department of Safety and Homeland Security. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

M. Wesley Hall IV, Unionville, Tennessee (on appeal), and Brian M. Griffith, Nashville, Tennessee (at trial), for the Appellant, William Waylon Hanson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert J. Carter, District Attorney General; and Weakley E. Barnard and Drew Wright, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### I. Factual Background

The Appellant was indicted for violating an order declaring him to be a motor vehicle habitual offender (MVHO), a Class E felony; failing to provide evidence of

financial responsibility, a Class C misdemeanor; and passing another vehicle in a no passing zone, a Class C misdemeanor. See Tenn. Code Ann. §§ 55-10-616; 55-12-139; 55-8-121.

On September 11, 2015, the State filed a motion in limine asking the trial court to prohibit the Appellant from collaterally attacking the validity of the MVHO order. Citing State v. William Tony Wright, No. M2001-01418-CCA-R3-CD, 2002 WL 1336655 (Tenn. Crim. App. at Nashville, June 19, 2002), the State contended that any argument or testimony suggesting the Appellant had no notice of the MVHO order was misleading because the Appellant had been convicted of violating the MVHO order on three prior occasions; therefore, such argument or testimony was inadmissible.

On September 30, 2015, immediately prior to trial, the trial court granted the State's motion. Defense counsel informed the trial court that he did not plan to collaterally attack the MVHO order. Instead, the defense strategy was to show that the State did not introduce proof the Appellant had notice of the MVHO order and that, accordingly, the State could not prove the Appellant intentionally, knowingly, or recklessly violated the MVHO order. The State then suggested that the easiest way to establish the Appellant's awareness of the MVHO order was to introduce proof of the Appellant's prior convictions of violating the order. Defense counsel responded that the State could prove the Appellant had notice of the order without informing the jury that the Appellant had prior convictions of the same crime, which were "more prejudicial than probative." The trial court warned that if the Appellant proceeded with the argument he did not have notice of the MVHO order, it would allow the State to rebut the claim by introducing "documents regarding service of process and awareness of court dates." The State again noted the Appellant's three prior convictions of violating the MVHO order and argued that because of those convictions, the Appellant was prohibited from asserting he had no notice of the order according to case law. The trial court agreed that the State could not "try the case with its hands behind its back like that," and reiterated its warning that if defense counsel raised the issue of notice, it would allow the State to rebut the defense's claims. Nevertheless, the trial court stated that it would not allow the State to introduce proof of the prior convictions until the Appellant "opens that door."

At trial, Chapel Hill Police Officer Andrew Kon testified that at 9:40 p.m. on Tuesday, March 31, 2015, he was driving his marked patrol car north on Highway 31-A in the area of Henry Horton Park when he saw a red Chevrolet Monte Carlo that was traveling southbound pass a blue Ford Expedition. Officer Kon saw the headlights of the Monte Carlo two or three hundred yards in front of his car "coming toward" him. Officer Kon said that although it was dark, the double yellow line indicating it was a no passing zone was clearly visible. Officer Kon made a U-turn and activated his patrol car's blue lights to initiate a traffic stop.

The red Monte Carlo stopped in a Dollar General Store parking lot. Officer Kon parked and approached the Appellant, who was the driver. Officer Kon advised the Appellant that he had been stopped for passing another vehicle in a no passing zone. He asked for the Appellant's driver's license, automobile registration, and proof of insurance, but the Appellant did not produce the documents. Officer Kon requested the Appellant's name and date of birth, then he conveyed the information he obtained to the police dispatcher. After receiving a response from the dispatcher, Officer Kon arrested the Appellant for driving on a revoked license, violating a MVHO order, failing to provide proof of financial responsibility, and improper passing. Officer Kon recalled that other vehicles were on the roadway when the Appellant passed the Expedition.

On cross-examination, Officer Kon acknowledged that the Appellant did not cause an accident and that no one was injured.

Nicholas Kiefer testified that he was a deputy clerk in the Davidson County Criminal Court Clerk's Office and that he was a "keeper of the records." From the Appellant's file, Kiefer identified a certified copy of an "Order to Appear . . . in an habitual offender matter." Kiefer explained that according to the order, the Appellant was ordered "to appear before the criminal court on the 19th of January, 2005, to show cause why he should not be declared an habitual traffic offender." Kiefer said that on the second page of the order was a "certificate of service from the deputy sheriff."

Kiefer identified another order by the Davidson County Criminal Court, which stated that the Appellant was declared to be an habitual traffic offender. The order, which was dated January 20, 2005, prohibited the Appellant from driving for three years and ordered that he surrender his license to the court. On the second page of the order was a signed certificate of service reflecting that a "true and exact copy" of the order had been "mailed or hand-delivered" to the Appellant "and/or" his attorney.

Kiefer also identified a "certified copy of what we call a file jacket. It's the front of the file that – it's the front of what would be a criminal case file." He explained that "only two specific clerks" in the office made notations on the front of the file jacket. The grand jury clerk wrote the case number, the division assignment, and the reason for the case. The "judge's in-court clerk" wrote the date of the docket and "notations similar to what would be on a minute entry." Kiefer examined the Appellant's file jacket and noticed that the first date listed was January 19, 2005. Kiefer said, "The notation for that day states that the [Appellant], Mr. William Hanson, was served and that the case was reset." The next date listed was January 20, 2005, which was the same date the MVHO order was entered.

On cross-examination, Kiefer acknowledged that he began working in the clerk's office in 2011 and that he was not present for any of the 2005 court proceedings.

Glendora Graves testified that she was a district manager with the Tennessee Department of Safety and Homeland Security. Through her employment, she had access to driving histories. In preparation for trial, she accessed the Appellant's driving history, which included a January 20, 2005 order declaring the Appellant to be a MVHO. The order resulted in the revocation of the Appellant's license. Graves stated that the Appellant's driving privileges were never restored and that the order was in effect on the day of the Appellant's arrest.

On cross-examination, Graves acknowledged that the branch of the Department of Safety and Homeland Security which was responsible for maintaining driving records was located in Nashville. She further acknowledged that she did not maintain the driving records. She also acknowledged that sometimes a driving record contained incorrect information but that it did not happen often.

On redirect examination, Graves asserted that the Appellant's driving record had "been certified as true and accurate by Susan Lowe of the financial responsibility division."

The jury convicted the Appellant as charged. On appeal, the Appellant contends that the trial court erred by granting the State's motion to prohibit the Appellant from collaterally attacking the motor vehicle habitual offender order, by limiting the defense's closing argument, and by admitting the Appellant's driving record into evidence through State's witness from the Department of Safety and Homeland Security. The Appellant also contends that the evidence was insufficient to sustain his conviction for violating an order declaring him to be a motor vehicle habitual offender.

## II. Analysis

### A. Collateral Attack on MVHO Order

As his first issue, the Appellant contends that he "makes a good faith argument for [a] change in the law thus allowing this case to be remanded to allow collateral attack on the Davidson County [MVHO] Order." In the trial court, the Appellant repeatedly asserted that he was not collaterally attacking the MVHO order and was instead claiming that the State failed to prove he received notice of the order and thus failed to prove he violated the order intentionally, knowingly, or recklessly. On appeal, however, the Appellant concedes that he is collaterally attacking the MVHO order.[1] The Appellant contends that the trial court misconstrued State v. William Tony Wright, No. M2001-

---

[1]We caution that "an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal." State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001).

01418-CCA-R3-CD, 2002 WL 1336655 (Tenn. Crim. App. at Nashville, June 19, 2002), as authority to grant the State's motion in limine restricting collateral attack on the MVHO order. He maintains that Wright did not stand for the proposition that a defendant could not collaterally attack an MVHO order. The Appellant did not cite any other cases in support of his contention. The Appellant contends that the trial court's erroneous ruling limited his ability to argue that the State had failed to prove that the Appellant knew about the MVHO order and, accordingly, that the Appellant could not have violated the order intentionally, knowingly, or recklessly.

This court has explained previously that "[a] proceeding under the Motor Vehicle Habitual Offender Act is civil in nature and therefore is governed by the Tennessee Rules of Civil Procedure." State v. Malady, 952 S.W.2d 440, 444 (Tenn. Crim. App. 1996). As the State notes, this court has held consistently that a defendant cannot collaterally attack an order declaring him to be a MVHO. See Davis v. State, 793 S.W.2d 650, 651 (Tenn. Crim. App. 1990); Everhart v. State, 563 S.W.2d 795, 797-98 (Tenn. Crim. App. 1978); State v. Tony Lynn Allen, No. M2007-00826-CCA-R3-CD, 2008 WL 2743882, at *3 (Tenn. Crim. App. at Nashville, July 15, 2008); State v. Nelson Keith Foster, No. E2001-02976-CCA-RM-CD, 2002 WL 181359, at *5 (Tenn. Crim. App. at Nashville, Feb. 1, 2002); State v. Michael Samuel Eidson, No. 03C01-9711-CR-00506, 1999 WL 160944, at *1 (Tenn. Crim. App. at Knoxville, Mar. 24, 1999). Instead, "the appropriate procedure for challenging a habitual [motor vehicle] offender order is to file a motion pursuant to Tennessee Rule of Civil Procedure 60.02." State v. Ernest Michael Turner, No. W2006-02661-CCA-R3-CD, 2008 WL 1700338, at *5 (Tenn. Crim. App. at Jackson, Apr. 4, 2008) (citing Bankston v. State, 815 S.W.2d 213, 216 (Tenn. Crim. App. 1991)).

We agree with the State that the Appellant's arguments regarding Wright are "not entirely accurate." The Appellant contends that the defendant in Wright was allowed to collaterally attack the MVHO order. However, in Wright, the defendant pled guilty to violating an MVHO order. Wright, No. M2001-01418-CCA-R3-CD, 2002 WL 1336655, at *1. Thereafter, he filed a motion to withdraw the guilty plea, arguing that he was "'legally innocent'" of the violation because the order did not comply with Tennessee Rule of Civil Procedure 58. Id. Simultaneously, the defendant filed a motion challenging the MVHO order under Tennessee Rule of Civil Procedure 60.02. Id. at *2. On appeal, this court determined that the defendant's issues turned upon whether he was entitled to relief under Rule 60.02 and, after consideration, held that "the trial court did not err in denying [the defendant's] motion for relief from the order declaring him to be a motor vehicle habitual offender." Id. at *4.

The record before us does not reflect that the Appellant ever filed a motion pursuant to Rule 60.02 challenging the MVHO order, and he has not filed such a motion in the instant case. Moreover, the State did not argue that Wright stood for the proposition that an MVHO order could not be collaterally attacked; instead, the State

- 5 -

cited Wright to support the proposition that a defendant who had pled guilty to violating the MVHO order previously consequently has notice of the order. We agree. The Appellant's arguments are unavailing.

## B. Closing Argument

The Appellant next contends that the trial court erred by limiting defense counsel's ability to argue during closing argument that the State introduced no proof the Appellant had notice of the MVHO order and that, accordingly, he could not have intentionally, knowingly, or recklessly violated the order. The State responds that the Appellant is not entitled to relief on this issue.

It is well-established that closing argument is an important tool for both parties during a trial; thus, counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

The record reflects that during closing argument, defense counsel acknowledged that the State had shown the jury the MVHO order but argued that it was required also to prove that the Appellant intentionally, knowingly, or recklessly violated the order. Defense counsel told the jury that all three mental states "require [the Appellant's] knowledge. That he knew this [order] existed." Defense counsel contended, however, the State presented no witnesses who testified that they saw the order being given to the Appellant or that he was in court the day the order was issued. The State objected to defense counsel's argument as a collateral attack on the MVHO order after the proof was closed. Defense counsel responded that he was not arguing that the order was invalid. The trial court said that it was being "liberal" with defense counsel's argument but cautioned that if defense counsel went "too far," it would let the State respond "within the confines of the proof." The trial court agreed that the Appellant's prior convictions were not part of the proof; nevertheless, the court observed that defense counsel was attempting to "sand bag" the State by claiming the Appellant had no notice of the MVHO order after the proof was closed in order to render the State unable to rebut the claim.

Defense counsel maintained that the State could have introduced the minutes or transcript of the MVHO hearing or called the district attorney who prosecuted that case to prove the Appellant had knowledge of the MVHO order. However, the trial court responded that the State was not required to go to such lengths to prove the Appellant's knowledge of the order and that it was "dis[i]ngenuous" for defense counsel to argue that the Appellant did not have notice of the MVHO order. The trial court allowed defense

- 6 -

counsel to argue "about what is on the order" but refused to let him argue that the Appellant did not have notice of the order. The court cautioned that if defense counsel persisted in his argument, the court might "have to craft a specific instruction," noting that the standard MVHO instruction did not explain that the State did not "have to prove a negative. They have to prove there was an order and he drove."

Initially, we note that the Appellant failed to cite any authority in support of his argument that the trial court erred by limiting his closing argument. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see Tenn. R. App. P. 27(a)(7).

Further, the Appellant argues that the trial court warned defense counsel that if he "continued this sort of argument, that the Court would allow the State to present to the jury evidence to show the [Appellant's] knowledge of the [MVHO] order." The Appellant provided no citation to the record where the court issued the foregoing warning. Our review of the record reveals that the trial court issued no such warning; instead, the trial court told the Appellant that it would allow the State to "do what they have got to do within the confines of the proof" and that the trial court would fashion a special jury instruction to inform the jury that the State did not have to prove the Appellant was in court on the day the MVHO order was issued.

Moreover, once defense counsel continued his closing argument, he argued to the jury that the certificate of service on the second page of the MVHO order was "pro forma" and did not specify the method in which the order may have been delivered to the Appellant. Defense counsel also argued that Kiefer did not work at the court at the time the order was issued and therefore could not testify specifically about how the Appellant received the order, whether it was mailed or hand-delivered, and could not assert that the Appellant definitively had received the order. Although defense counsel was allowed to make this argument, it was inappropriate and an attempt to collaterally attack the underlying judgment. The Appellant is not entitled to relief on this issue.

## C. Graves's Testimony

As his next issue, the Appellant argues that Graves was not qualified to testify about his driving record because she was not the keeper of the records at the Department of Safety and Homeland Security and that the driving record was not a self-authenticating document. He complains that the trial court required the Appellant to choose between allowing Graves to testify that his driving privileges had not been reinstated since the MVHO order or allowing the Appellant's redacted driving history to be entered into evidence as a self-authenticating document. The State responds that the Appellant has waived the issue by failing to include the Appellant's driving record in the appellate

record for our review. In the alternative, the State argues that the trial court did not err by limiting Graves's testimony to whether the Appellant's driving privileges had been reinstated. We agree with the State.

During a jury-out hearing, the State announced that it intended to call Glendora Graves as the keeper of the records of the Department of Safety and Homeland Security. She said that her department was responsible for issuing driver's licenses and keeping information regarding driver's histories. Graves asserted that the Appellant's driving history reflected that his driver's license had been revoked and had never been reinstated.

Defense counsel objected to Graves being allowed to testify, arguing that although she could access the records, she was not the keeper of the records. The trial court asked whether the records were self-authenticating. The State responded that the records were self-authenticating.

We are unable to address any of the Appellant's concerns regarding whether the Appellant's driving record was self-authenticating because the Appellant failed to include the driving record in the appellate record for our review. The Appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Accordingly, the Appellant is not entitled to relief on this issue.

D. Sufficiency of the Evidence

As his final issue, the Appellant challenges the sufficiency of the evidence sustaining his conviction for violating the MVHO order, asserting that the State failed to prove that he violated the order intentionally, knowingly, or recklessly. The State responds that the proof was sufficient. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the

credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

This court previously has observed that in order to sustain a conviction under Tennessee Code Annotated section 55-10-616(a), the State must "prove (1) that [the A]ppellant was subject to a judgment or order prohibiting him from operating a motor vehicle and (2) that he operated a motor vehicle while that judgment or order was in effect." State v. Mark A. Crites, No. M2013-01681-CCA-R3-CD, 2014 WL 2567146, at *5 (Tenn. Crim. App. at Nashville, June 6, 2014). This court also has noted that because the statute does not plainly dispense with a mens rea requirement, the necessary culpable mental states are intentional, knowing, or reckless.[2] State v. James Stacy Carroll, No. W2003-01182-CCA-R3-CD, 2004 WL 541130, at *2 (Tenn. Crim. App. at Jackson, Mar.

---

[2] Tennessee Code Annotated section 39-11-302 provides in pertinent part:

(a) "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

(c) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

15, 2004) (citing Tenn. Code Ann. § 39-11-301(b) (2003); Crittenden v. State, 978 S.W.2d 929, 930 (Tenn. 1998)).

In the light most favorable to the State, the proof adduced at trial revealed that on the evening of March 31, 2015, Officer Kon was driving north on Highway 31-A when he saw a red Monte Carlo pass a blue Ford Expedition in a no passing zone. Officer Kon stopped the Monte Carlo, which was being driven by the Appellant. The Appellant was unable to produce his driver's license, automobile registration, or proof of insurance. Davidson County Criminal Court records reflected that on January 19, 2005, the court issued an order for the Appellant to appear in an habitual traffic offender matter. On the order was a certificate of service from the deputy sheriff. The court records also reflected that on January 20, 2005, the court issued an order declaring the Appellant an habitual traffic offender. The second page of the order reflected that a copy of the order was to be sent to the Appellant or his attorney and also reflected a signed certificate of service. The Appellant's driving privileges were never restored. We conclude that the foregoing evidence was sufficient to sustain the Appellant's conviction of violating an MVHO order.

## III. Conclusion

In sum, we conclude that the Appellant is not entitled to relief on any of his issues. The judgments of the trial court are affirmed.

_____
NORMA MCGEE OGLE, JUDGE